**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE APPLICATION OF MAMMOET SALVAGE, B.V. FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S *EX PARTE* APPLICATION FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

William T. O'Brien (*pro hac pending*)
John Lomas (*pro hac pending*)
Daniel Morris (*pro hac pending*)
Eversheds Sutherland (US) LLP
700 Sixth St. N.W., Ste. 700
Washington, D.C. 20001
Telephone:    (202) 383-0100
Facsimile:    (202) 637-3593
williamobrien@eversheds-sutherland.com
danielmorris@eversheds-sutherland.com

Ulyana Bardyn (N.Y. Bar No. 4307633)
Eversheds Sutherland (US) LLP
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 389-5000
Facsimile: (212) 389-5099
ulyanabardyn@eversheds-sutherland.com

*Counsel for Applicant Mammoet Salvage, B.V.*

March 21, 2023

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ ii

Introduction ........................................................................................................... 1

Jurisdiction and Venue .......................................................................................... 1

Factual Background ............................................................................................... 2

Argument and Authority ........................................................................................ 6

    I.      Section 1782 authorizes the Court to grant applications for discovery in aid of foreign proceedings ........................................................................ 6

    II.     Mammoet's Application satisfies the statutory requirements ................................ 8

          A.      The Correspondent Banks are "found" within the Southern District of New York ................................................................................ 8

          B.      The discovery sought is for use in foreign proceedings ......................... 10

          C.      Mammoet is an interested person ........................................................... 11

    III.    The Court should exercise its discretion to grant the Application ........................ 11

          A.      The Correspondent Banks are not parties to the foreign proceedings ........................................................................................... 12

          B.      The foreign tribunals will be receptive to the discovery ......................... 12

          C.      The Application is not an attempt to circumvent foreign proof-gathering restrictions ...................................................................... 13

          D.      The proposed discovery requests are not unduly intrusive or burdensome ....................................................................................... 14

Conclusion ............................................................................................................ 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Ex Parte Application Pursuant to 28 U.S.C.
    § 1782 for an Order to Take Discovery of Habib for Use in a Foreign
    Proceeding*, No. 21-MC-522 (KMK), 2022 U.S. Dist. LEXIS 72545
    (S.D.N.Y. Apr. 20, 2022) ........................................................................... 10, 12

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012) ................................................................................ 7

*Certain Funds, Accounts &/Or Inv. Vehicles Managed By Affiliates Of Fortress
    Inv. Grp. L.L.C. v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015) ............................................................................ 11

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .......................................................................................... 8

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019) ..................................................................... 7, 8, 9

*In re Devine*,
    No. 22-MC-133 (VSB), 2022 U.S. Dist. LEXIS 94193 (S.D.N.Y. May 25,
    2022).................................................................................................................. 8

*Euromepa, S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) ............................................................................ 12

*Fed. Republic of Nig. v. VR Advisory Servs.*,
    25 F.4th 99 (2d Cir. 2022) .......................................................................... 7, 10

*In re Geert Duizendstraal*,
    Case No. 3:95-MC-150-X, 1997 U.S. Dist. LEXIS 16506 (N.D. Tex. Apr. 16,
    1997)................................................................................................................ 13

*Gucci Am. v. Bank of China*,
    768 F.3d 122 (2d Cir. 2014) .............................................................................. 9

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
    633 F.3d 591 (7th Cir. 2011) ........................................................................... 14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ...............................................................................*passim*

*In re Invest Bank PSC*,
  567 F. Supp. 3d 449 (S.D.N.Y. 2021) .................................................................. 13

*In re Lake Holding & Fin. S.A.*,
  No. 20-MC-652 (RA) (KNF), 2021 U.S. Dist. LEXIS 117277 (S.D.N.Y. June
  23, 2021) .......................................................................................................... 10

*In re in re Malev Hungarian Airlines*,
  964 F.2d 97 (2d Cir. 1992) ................................................................................... 8

*Metallgesellschaft v. Hodapp (In re An Order Permitting Metallgesellschaft Ag to
  Take Discovery)*,
  121 F.3d 77 (2d Cir. 1997) ............................................................................. 8, 14

*Minatec Fin. S.a.r.l. v. SI Grp. Inc.*,
  No. 1:08-CV-269, 2008 U.S. Dist. LEXIS 63802 (N.D.N.Y. Aug. 18, 2008) ...... 13

*In re Patokh Chodiev & Int'l Mineral Res. B.V.*,
  No. 1:18-mc-13-EGS-RMM, 2021 U.S. Dist. LEXIS 253092 (D.D.C. May 14,
  2021) ............................................................................................................ 13, 15

*United Co. Rusal, PLC v. Trafigura A.G.*,
  No. 3:11mc17 (SRU), 2011 U.S. Dist. LEXIS 26897 (D. Conn. Mar. 16,
  2011) .............................................................................................................. 1, 2

*In re Upper Brook Cos.*,
  No. 22-mc-97 (PKC), 2022 U.S. Dist. LEXIS 231242 (S.D.N.Y. Dec. 23,
  2022) ................................................................................................................ 12

**Statutes**

28 U.S.C. § 1331 ...................................................................................................... 1

28 U.S.C. § 1782 ...............................................................................................*passim*

Petitioner Mammoet Salvage, B.V. ("Mammoet") respectfully submits this Memorandum of Law in support of its Application for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 (the "Application"). In support of the Application, Mammoet states:

## INTRODUCTION

Mammoet makes this Application for an order authorizing it to issue subpoenas to certain banks found within this judicial district to produce documents for use in currently pending foreign court proceedings in the Netherlands and the United Arab Emirates (the "UAE") and contemplated enforcement proceedings in Belgium.

The foreign court proceedings are efforts to confirm and enforce a more than US$85 million (in principal) arbitral award in Mammoet's favor and against the Basra Oil Company ("BOC"). Declaration of Daniel Morris ("Morris Decl."), at ¶ 5. An award that, to date, BOC has refused to pay. *Id.*, ¶ 6. The total amount due including interest and costs per March 1, 2023 is US$106,270,799. *Id.* Accruing interest from March 1, 2023 until the date of full payment is US$354,228 per month. *Id.*

The respondents are correspondent banks of the Trade Bank of Iraq, whose services would have been necessary to effect international transfers to or from BOC. *Id.*, ¶ 12 & Ex. 2.

As discussed below, this Application satisfies the Section 1782 statutory factors and each of the *Intel* discretionary factors likewise weighs in favor of granting the Application. Accordingly, Mammoet respectfully requests that the Court grant its Application.

## JURISDICTION AND VENUE

As an action for foreign discovery under 28 U.S.C. § 1782, this action arises under federal law, and the Court has jurisdiction pursuant to 28 U.S.C. § 1331. *United Co. Rusal, PLC*

*v. Trafigura A.G.*, No. 3:11mc17 (SRU), 2011 U.S. Dist. LEXIS 26897, at *10 (D. Conn. Mar. 16, 2011).

Venue is proper here as, pursuant to Section 1782(a), this is the judicial district in which respondents "reside[] or [are] found."

## FACTUAL BACKGROUND

This Section 1782 action arises from efforts to recognize and enforce an arbitral award in excess of a principal amount of US$85 million entered in favor of Mammoet and against BOC.

BOC, formerly known as the South Oil Company, is one of the largest companies in Iraq and is an Iraqi state-owned enterprise controlled by the Iraqi Ministry of Oil, responsible for the majority of Iraq's oil production. Morris Decl., ¶ 3.

During the 1991 Gulf War, a large crude oil carrier called the Amuriyah was bombed and, after burning for two weeks, sank to the seabed off the coast near Basra, in Southern Iraq. *Id.*, ¶ 4. As part of an expansion of the Al Basra Oil Terminal intended to increase international exports, the Iraqi Ministry of Oil determined it was necessary to remove the Amuriyah wreck. *Id.*

In December 2013, BOC contracted with Mammoet, a leading salvage company, for removal of the Amuriyah wreck. *Id.*, ¶ 5. Disputes arose relating to BOC's performance of its obligations under the contract, and in August 2018 Mammoet instituted arbitration proceedings with the International Chamber of Commerce International Court of Arbitration (the "ICC") against BOC, pursuant to the parties' contract. *Id.* Mammoet obtained an award (the "Final Award") against BOC in the aggregate principal amount of US$85,014,784, with 5% interest accruing from August 17, 2018 until full payment, plus US$207,600 in arbitration costs and US$1,751,223.54 in party costs. *Id.* The counterclaim issued by BOC was awarded in a Supplemental Final Award ("Counterclaim Award") up to an aggregate principal amount of

US$37,738,777 with 5% simple interest accruing from August 16, 2019 until full payment. *Id.* Netting the counterclaim plus accrued interest off, the principal amount owed by BOC to Mammoet is US$58,758,475. *Id.*

In February 2022, BOC filed an application to set aside the Final Award (the "Set Aside Application") before the Dubai International Financial Centre ("DIFC") courts in UAE. *Id.*, ¶ 7. The Set Aside Application was rejected by the DIFC court by judgment dated February 8, 2023 (*The Court of First Instance of the Dubai International Financial Centre Courts, Judgment of H.E. Justice Shamlan Al Sawalehi)*. *Id.* BOC has requested leave to appeal the judgment. *Id.* Insofar as known by Mammoet, no decision has yet issued on BOC's request for leave to appeal. *Id.*

In May 2022, Mammoet was granted leave to make conservatory third-party attachments in the Netherlands under Bashneft International B.V. ("Bashneft") and ENI Iraq B.V. respectively, two international oil companies registered in the Netherlands. *Id.*, ¶8. After the attachment, Bashneft declared an amount of US$9,757,000 as payable to BOC in 2022. *Id.* The attachment against ENI Iraq B.V. was not successful. *Id.* Pursuant to the leave for attachment and having made the attachments, Mammoet was required to file proceedings on the merits against BOC in the Netherlands within 52 weeks after the date of attachment. *Id.* In March 2023, Mammoet instituted proceedings against BOC in the Netherlands with the Court of Appeals in Amsterdam, requesting recognition of and leave to enforce the Final Award against BOC. *Id.* After the court sets a date for the hearing, Mammoet must serve the recognition and enforcement request upon BOC. *Id.* The date of the hearing is expected to be set by the court and to take place within the next few months. *Id.*

Likewise, on March 2, 2023, Mammoet instituted *ex parte* proceedings in the UAE to have the Final Award recognized against BOC. *Id.*, ¶ 9. By an Order dated March 20, 2023, the

DIFC courts recognized the Final Award as binding within the DIFC, enforceable in the same manner as a judgment or order of the DIFC courts. *Id.* It was further ordered that BOC must pay Mammoet the sum of US$106,270,799 and a further sum US$354,228 per month from March 1, 2023. *Id.* BOC may make an application to have the Order set aside within 14 days from the date of service of the DIFC Order. *Id.*

In Belgium, a conservatory third-party attachment under BP Iraq N.V. ("BPI") was made in May 18, 2022. *Id.*, ¶ 10. BPI declared on May 30, 2022 that it did not owe BOC any amounts or effects. *Id.* This despite the fact that BPI also declared that it was party to a long-term Technical Services Contract ("TSC") with BOC and other parties relating to an oilfield in Iraq known as the Rumaila oilfield, one of the largest oilfields in the world. *Id.* BPI also declared that in November 2021 it was party to an agreement with a Dubai entity, providing for the assignment by BPI of all the rights and obligations under the TSC and various other related agreements to said Dubai entity. *Id.* BPI was unwilling to provide a copy of the agreements to which it had declared to be party. *Id.* Nevertheless, from information published by BP p.l.c. it appears that substantial payments have been made to BOC relating to the Rumaila oilfield in the period from 2017 to 2021. *Id.* As a result, Mammoet is contemplating further actions in Belgium. *Id.*

Notwithstanding the above proceedings, no portion of the Final Award has yet been paid. *Id.*, ¶ 6.

The Trade Bank of Iraq ("TBI") was established by the Coalition Provisional Authority in July 2003 as an independent government entity to provide financial services to facilitate import and export of goods and services to and from Iraq. *Id.*, ¶ 11 & Ex. 1. Fitch Ratings reports that "TBI operates as the government's trade-finance arm and is the third-largest bank in the

country with a market share of more than 20% in sector assets." *Id.* TBI therefore plays a vital role in international transfers by entities such as BOC. Further, on information and belief TBI handles all transactions for Iraqi state-owned enterprises.

Key to TBI's purpose is its relationship with correspondent banks, which permit it to effect international transfers. TBI's current correspondent banks are Citibank NA, New York, USA; Commerzbank AG, Frankfurt am Main, Germany; JPMorgan Chase Bank National Association, New York, USA; JPMorgan Chase Bank National Association, London, United Kingdom; J.P. Morgan SE, Frankfurt am Main, Germany; MashreqBank PSC, Dubai City, United Arab Emirates; MUFG Bank Ltd., Tokyo, Japan; The Saudi National Bank, Riyadh, Saudi Arabia; Sohar International Bank SAOG, Muscat, Oman; Standard Chartered Bank, London, United Kingdom; Standard Chartered Bank, Dubai City, United Arab Emirates; and UniCredit Bank AG, Munich, Germany. *Id.*, ¶ 12 & Ex. 2. Each of these banks other than Sohar International Bank SAOG and the Saudi National Bank maintain branch offices or their principal place of business within the Southern District of New York (the "Correspondent Banks"). *Id.*, ¶¶ 13-19. Both Citibank and JPMorgan are US dollar correspondent banks for TBI. *Id.,* ¶ 12 & Ex. 2. While the other Correspondent Banks primarily transact in currencies other than US dollars, given the predominance of US dollars in and the structure of the international oil industry, there is a reasonable likelihood that regardless of the final currency some transactions have been made in US dollars or required a US dollar conversion.

With this Application, Mammoet seeks discovery to aid the foreign court proceedings in the Netherlands and the UAE and contemplated court proceedings in Belgium. The discovery sought is information relating to transfers to or from BOC in the respondents' role as correspondent banks of TBI. This discovery is intended to develop evidence:

1. To locate BOC's bank accounts;

2. To locate BOC's assets;

3. To identify and locate BOC's trading partners, for the purposes of identifying third-party debt orders or accounts receivable, etc.;

4. To identify whether BOC has conveyed its assets to one or more related parties in an effort to evade execution, to pursue fraudulent conveyance and similar actions; and

5. To identify whether BOC may be employing related parties or trading partners as a paying and/or payment agent to evade execution, for the purpose of launching tort, alter ego, or similar claims.

As demonstrated by the attached proposed template Exhibit A to Subpoena, the discovery sought is narrowly tailored, involving requests for information regarding a sole customer, BOC, and temporally limited to the past ten years, which constitutes the period from the execution of the underlying contract to date.

## ARGUMENT AND AUTHORITY

I.  **Section 1782 authorizes the Court to grant applications for discovery in aid of foreign proceedings**

Section 1782 authorizes the Court to grant discovery in aid of foreign proceedings. The statute provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal… The order may be made … upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court… The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international

> tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). As a result, three statutory factors must be satisfied before an order pursuant to Section 1782 may issue:

> (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made,
>
> (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and
>
> (3) the application is made by… any interested person.

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

Meeting the statutory thresholds, however, is only the first of a two-step analysis. *Fed. Republic of Nig. v. VR Advisory Servs.*, 25 F.4th 99, 111 (2d Cir. 2022). After determining that the statutory requirements are met, courts must then consider four discretionary factors:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";
>
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance";
>
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
>
> (4) whether the request is "unduly intrusive or burdensome."

*In re del Valle Ruiz*, 939 F.3d 520, 533-34 (2d Cir. 2019) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)).

Further, the Second Circuit has instructed that "that district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts . . . .'" *Metallgesellschaft v. Hodapp (In re An Order Permitting Metallgesellschaft Ag to Take Discovery)*, 121 F.3d 77, 79 (2d Cir. 1997) (quoting *In re in re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)).

## II.   Mammoet's Application satisfies the statutory requirements

### A.   The Correspondent Banks are "found" within the Southern District of New York

Each of the Correspondent Banks "resides or is found" within the Southern District of New York. The scope of this language in Section 1782 "extends to the limits of personal jurisdiction consistent with due process." *Valle Ruiz*, 939 F.3d at 528. As a result, an entity may be "found" within the District if the Court exercises general or specific personal jurisdiction over it. *In re Devine*, No. 22-MC-133 (VSB), 2022 U.S. Dist. LEXIS 94193, at *10 (S.D.N.Y. May 25, 2022).

For general jurisdiction, the paradigmatic bases for personal jurisdiction over a corporation are its state of incorporation and the location of its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

In addition and in the alternative, a corporation may be subject to specific jurisdiction. Specific jurisdiction "permits adjudicatory authority only over issues that 'aris[e] out of or relat[e] to the [entity's] contacts with the forum.'" *Valle Ruiz*, 939 F.3d at 529. A finding of specific jurisdiction requires courts to asses "(1) 'first assess the connection between the nonparty's contacts with the forum and the order at issue' and (2) 'then decide whether

exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice.'" *Id.* (quoting *Gucci Am. v. Bank of China*, 768 F.3d 122, 137 (2d Cir. 2014)).

Here, each of the Correspondent Banks meets the jurisdictional threshold:

Citibank's headquarters and principal place of business are located at 388 Greenwich Street, New York, N.Y. Morris Decl., ¶ 13. As its principal place of business is located within this judicial district, this Court has general jurisdiction over it. In addition and in the alternative, Citibank has offices within this judicial district from which Citibank transacted transfers to and from TBI, which transactions relate to the issues Mammoet seeks to evidence with this discovery, e.g., the location of BOC assets and the extent to which Iraqi governmental entities controlled BOC.

JPMorgan's headquarters and principal place of business are located at 383 Madison Avenue, New York, N.Y. *Id.*, ¶ 14. As its principal place of business is located within this judicial district, this Court has general jurisdiction over it. In addition and in the alternative, JP Morgan has offices within this judicial district from which JP Morgan transacted transfers to and from TBI, which transactions relate to the issues Mammoet seeks to evidence with this discovery, e.g., the location of BOC assets and the extent to which Iraqi governmental entities controlled BOC.

Commerzbank maintains a branch office at 225 Liberty Street, New York, N.Y. *Id.*, ¶ 15. From this location, Commerzbank transacted transfers to and from TBI, which transactions relate to the issues Mammoet seeks to evidence with this discovery, e.g., the location of BOC assets and the extent to which Iraqi governmental entities controlled BOC.

MashreqBank maintains a branch office at 17 State Street, Suite 2230, New York, N.Y. *Id.*, ¶ 16. From this location, MashreqBank transacted transfers to and from TBI, which

transactions relate to the issues Mammoet seeks to evidence with this discovery, e.g., the location of BOC assets and the extent to which Iraqi governmental entities controlled BOC.

MUFG Bank maintains a branch office at 1251 Avenue of the Americas, New York, N.Y. *Id.*, ¶ 17. From this location, MUFG transacted transfers to and from TBI, which transactions relate to the issues Mammoet seeks to evidence with this discovery, e.g., the location of BOC assets and the extent to which Iraqi governmental entities controlled BOC.

Standard Chartered Bank maintains a branch office at 1095 6th Ave, New York, N.Y. *Id.*, ¶ 18. From this location, Standard Chartered Bank transacted transfers to and from TBI, which transactions relate to the issues Mammoet seeks to evidence with this discovery, e.g., the location of BOC assets and the extent to which Iraqi governmental entities controlled BOC.

UniCredit Bank maintains a branch office at 150 E 42nd St, New York, N.Y. *Id.*, ¶ 19. From this location, UniCredit Bank transacted transfers to and from TBI, which transactions relate to the issues Mammoet seeks to evidence with this discovery, e.g., the location of BOC assets and the extent to which Iraqi governmental entities controlled BOC.

## B. The discovery sought is for use in foreign proceedings

The discovery sought in this Application is to support current and contemplated proceedings for recognition and enforcement of the Award.

Section 1782 may properly support arbitral award recognition and enforcement proceedings abroad. *E.g., VR Advisory Servs.*, 25 F.4th at 120; *In re Lake Holding & Fin. S.A.*, No. 20-MC-652 (RA) (KNF), 2021 U.S. Dist. LEXIS 117277, at *49 (S.D.N.Y. June 23, 2021); *see also In re Ex Parte Application Pursuant to 28 U.S.C. § 1782 for an Order to Take Discovery of Habib for Use in a Foreign Proceeding*, No. 21-MC-522 (KMK), 2022 U.S. Dist. LEXIS 72545, at *7 (S.D.N.Y. Apr. 20, 2022) (granting application in aid of judgment enforcement proceedings in the UAE).

Likewise, Section 1782 may properly support the contemplated proceedings here, which are "within reasonable contemplation." *Certain Funds, Accounts &/Or Inv. Vehicles Managed By Affiliates Of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*, 798 F.3d 113, 123-24 (2d Cir. 2015). Mammoet has "more than a subjective intent to undertake some legal action. *Id.* As the facts demonstrate, the contemplated proceeds are more than "just a twinkle in counsel's eye." *Id.*

Here, as discussed above, proceedings in the UAE and the Netherlands are already in progress. In addition to the above proceedings already in progress, Mammoet is contemplating further proceedings, as recited above. Similarly, Mammoet is contemplating proceedings wherever it can identify BOC assets. The discovery sought here will facilitate the efficient resolution of those proceedings.

### C. Mammoet is an interested person

Mammoet is an interested person for the purposes of Section 1782. "The text of § 1782(a), 'upon the application of any interested person,' plainly reaches beyond the universe of persons designated 'litigant.'" *Intel*, 542 U.S. at 256. There is, therefore, "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Id.*

Here, Mammoet is a litigant in the foreign proceedings, having already brought the actions in the UAE and the Netherlands. Moreover, Mammoet will also be a litigant in the contemplated proceedings in Belgium and potentially elsewhere.

### III.   The Court should exercise its discretion to grant the Application

Not only does the Application satisfy the Section 1782 statutory factors, the discretionary factors weigh in favor of granting the Application. The Correspondent Banks are not parties to the foreign proceedings. The foreign tribunals will be receptive to the discovery. The Application

is not an attempt to conceal or circumvent foreign proof-gathering restrictions. And the proposed discovery requests are narrowly tailored such that they are neither unduly intrusive nor burdensome.

### A. The Correspondent Banks are not parties to the foreign proceedings

The first discretionary factor weighs in favor of granting the Application. The first factor considers whether the respondents are parties to the foreign proceedings as "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.

None of the Correspondent Banks are parties to the proceedings in the UAE or the Netherlands. Further, none would be parties to the contemplated actions, to which only Mammoet and BOC would be parties.

This factor, therefore, weighs in favor of granting the Application.

### B. The foreign tribunals will be receptive to the discovery

The second factor considers the nature of the foreign tribunals and proceedings and whether they will be receptive to the discovery sought and again weighs in favor of granting the Application. Notably, courts considering this factor have been instructed to presume the foreign proceedings will be receptive to foreign discovery: "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa, S.A. v. R. Esmerian, Inc*., 51 F.3d 1095, 1102 (2d Cir. 1995). Thus, a court should presume receptivity absent "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* at 1100; *In re Upper Brook Cos.*, No. 22-mc-97 (PKC), 2022 U.S. Dist. LEXIS 231242, at *22 (S.D.N.Y. Dec. 23, 2022) (second factor weighed in favor of discovery where no "authoritative proof" demonstrated that the Dutch courts would reject it); *In re Habib*, 2022 U.S. Dist. LEXIS 72545,

at *8 (second factor weighed in favor of discovery where no "authoritative proof" demonstrated that the UAE courts would reject it).

Not only is there no "authoritative proof" that the UAE, the Netherlands, or Belgium would reject this discovery—in fact, US courts have previously found that these courts would be receptive of US discovery. *E.g., In re Invest Bank PSC*, 567 F. Supp. 3d 449, 451 (S.D.N.Y. 2021) (evidence supported that "UAE would be receptive to materials produced pursuant to his application"); *In re Patokh Chodiev & Int'l Mineral Res. B.V.*, No. 1:18-mc-13-EGS-RMM, 2021 U.S. Dist. LEXIS 253092, at *28 (D.D.C. May 14, 2021) ("There is no basis to believe that any court in Belgium would reject the information that Applicants seek."); *In re Geert Duizendstraal*, Case No. 3:95-MC-150-X, 1997 U.S. Dist. LEXIS 16506, at *5 (N.D. Tex. Apr. 16, 1997) (quoting Dutch court's approval of Section 1782 actions).

Thus, the second factor likewise weighs in favor of granting the Application.

## C. The Application is not an attempt to circumvent foreign proof-gathering restrictions

The third factor, "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," *Intel*, 542 U.S. at 265, likewise favors granting the Application here.

As noted above, the foreign proceedings at issue here would be receptive to the discovery sought. Further, there is no discovery or similar order in place in the proceedings that would bar discovery of this information.

Further, Mammoet stands ready to enter into a protective order that is reasonable in light of the multijurisdictional character of this matter to address any confidentiality concerns respondents may raise. *See Minatec Fin. S.a.r.l. v. SI Grp. Inc.*, No. 1:08-CV-269 (LEK/RFT), 2008 U.S. Dist. LEXIS 63802, at *29 (N.D.N.Y. Aug. 18, 2008) ("[T]he beauty of § 1782 is that

it permits this Court to impose a protective order that would extinguish any concern that privileged, confidential, or proprietary information would be indecorously revealed.")

    This third factor therefore also supports granting the Application.

### D.  The proposed discovery requests are not unduly intrusive or burdensome

    The fourth factor likewise weighs in favor of granting the Application because the proposed discovery requests are not unduly intrusive or burdensome. The discovery sought relates to a single customer, BOC, over a time period of less than ten years. The documents sought—bank transfer information—are regularly maintained in the ordinary course of business.

    To the extent that respondents assert reasonable objections to the scope of the requests, Mammoet will work with respondents to appropriately resolve those concerns. As the Second Circuit has held that it is "far preferable" to resolve concerns regarding scope by tailoring the requests than be denying a Section 1782 application outright. *Metallgesellschaft*, 121 F.3d at 80; *accord Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (holding that, barring abuse of the Section 1782 process, denying an application solely because of concerns regarding scope and burden is an abuse of discretion). Similarly, as noted above, Mammoet anticipates the entry of a reasonable protective order to remedy any applicable confidentiality concerns.

    This fourth factor therefore weighs in favor of granting the Application.

## CONCLUSION

    For the foregoing reasons, Mammoet respectfully requests that the Court grant its Application and authorize it to issue the proposed subpoenas.

Dated: March 21, 2023
       New York, New York

Respectfully submitted,

EVERSHEDS SUTHERLAND (US) LLP

/s/ Ulyana Bardyn

| | |
|---|---|
| William T. O'Brien (*pro hac pending*) | Ulyana Bardyn (N.Y. Bar No. 4307633) |
| John Lomas (*pro hac pending*) | The Grace Building, 40th Floor |
| Daniel Morris (*pro hac pending*) | 1114 Avenue of the Americas |
| 700 Sixth St. N.W., Ste. 700 | New York, NY 10036 |
| Washington, D.C. 20001 | Telephone: (212) 389-5000 |
| Telephone:    (202) 383-0100 | Facsimile: (212) 389-5099 |
| Facsimile:    (202) 637-3593 | ulyanabardyn@eversheds-sutherland.com |
| williamobrien@eversheds-sutherland.com | |
| danielmorris@eversheds-sutherland.com | |
| | *Counsel for Applicant Mammoet Salvage, B.V.* |

Appendix A

## DEFINITIONS & INSTRUCTIONS

1. "Basra Oil Company" means Basra Oil Company, also known as the Basrah Oil Company and formerly known as the South Oil Company, organized under the laws of Iraq and with its principal place of business in Basra, Iraq.

2. "Document" and "Documents" means the original and all copies and prior drafts or any information in any written, recorded or graphic form, including but not limited to, memoranda, catalogs and summaries of information or data, whether typed, handwritten, printed, recorded, in electronic format, or otherwise produced or reproduced, and includes all photographs, microfilm, microfiche, or other reproduction thereof, including but not limited to each and every note, memorandum, letter, electronic mail, text message, instant message, publication, circular, release, article, report, book, record financial statement, computer disc, list, index, account book, draft, summary, diary, transcript, agreement, calendar, graph, receipt, chart, business record, insurance policy, videotape, cassette tape, or film.

3. If a request requires producing a document that is no longer in your possession, custody or control, you should identify the missing document and submit a written explanation that states when the document was most recently in your possession, custody, or control, the disposition of the document, and the identity of the person now in possession, custody, or control of the document. If the document has been destroyed or lost, state when this occurred, the circumstances surrounding its loss or the reason for its destruction, and the identity of the person last in possession of the document or who directed that the document be destroyed.

4.      If in response to any request, you refuse to produce a document because of a claim of confidentiality or privilege concerning any information, set forth in detail in a form agreed to between the parties, the facts or the circumstances upon which you purport to rely with sufficiently detailed information so as to allow the Court to understand the basis of any asserted claim of privilege.

5.      You are to produce electronically stored information ("ESI") in text-searchable, .pdf format. Should there be any issues with your ability to produce ESI in such format, you should raise this with the above-signed counsel sufficiently in advance of your production date so that the parties may discuss and confer on the production format.

## REQUESTS

This subpoena requires production of all documents that are responsive to the requests below and are in your possession, custody or control:

1.   Any orders, instructions or wire transfers received from any person or entity (including but not limited to, any payor/transferor bank to a payee/transferee bank) for the benefit or credit of Basra Oil Company in which [the Correspondent Bank] has acted as either as direct transfer bank or as the intermediary or correspondent bank, together with any electronic and/or paper records thereof for the period beginning December 2013 to the present.

2.   Any documents relating to any account owned by Basra Oil Company or for which it was an authorized signer for the period beginning December 2013 to the present.

3.   Any loan documents, including loan applications, submitted by or on behalf of Basra Oil Company for the period beginning December 2013 to the present.