**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE APPLICATION OF MAMMOET
SALVAGE, B.V. FOR AN ORDER TO
TAKE DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS PURSUANT TO
28 U.S.C. § 1782

No. 1:23-mc-00073-AT

---

**MEMORANDUM OF LAW IN RESPONSE TO MAMMOET'S *EX PARTE***
**APPLICATION FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN**
**PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

VINSON & ELKINS LLP
1114 Avenue of the Americas
32nd Floor
New York, NY 10036
Tel.: +1.212.237.0000
Fax: +1.212.237.0100

*Attorneys for Proposed Intervenor*
*Basra Oil Company*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 2

I.      Mammoet's Application Arises from an Arbitration Award that Is Still Actively
        Being Litigated............................................................................................................. 2

II.     The Application Seeks BOC's Financial Documents and Information to Execute
        Against BOC Even Though There Is No Judgment Arising from the Award That
        Is Capable of Being Executed Against. ....................................................................... 6

LEGAL STANDARD ....................................................................................................... 6

ARGUMENT ..................................................................................................................... 7

III.    The Application Fails Section 1782's Statutory Requirements. .................................. 7

        A.      None of the Correspondent Banks—aside from Citibank—Are "Found"
                in the Southern District of New York. ............................................................. 7

                i.       The Five Foreign Correspondent Banks Are Not "Found" in this
                         District................................................................................................... 7

                ii.      JPMorgan Chase Bank National Association Is Not "Found" in
                         this District........................................................................................... 13

                iii.     Three of TBI's Correspondent Banks Are Unnamed and Not
                         Found Within this District. .................................................................. 14

        B.      The Discovery Mammoet Seeks Under Section 1782 Is Not for Use in a
                Proceeding in a Foreign or International Tribunal........................................... 15

                i.       The Documents and Information Sought Are Not "for use in" the
                         DIFC Court Proceedings...................................................................... 17

                         a.      Because there is no DIFC judgment on which execution
                                 can be levied, discovery for asset-collection purposes is
                                 barred. ........................................................................................ 17

                         b.      Information concerning BOC's assets, bank accounts, and
                                 trading partners is irrelevant and not useful to the claims
                                 and defenses at issue in the DIFC Court Proceedings. .............. 19

                ii.      The Documents Sought Are Not "for use in" the Proceedings in
                         the Netherlands. .................................................................................. 21

                         a.      The Attachment Case in The Netherlands Has Concluded
                                 and Was Not Adjudicative in Nature. ........................................ 21

                         b.      The Recognition and Enforcement Case Fails the "for use
                                 in" Requirement for Multiple Reasons. ..................................... 22

                iii.     The Attachment Proceeding in Belgium Has Concluded, and
                         Alleged Future Proceedings Are Not Within Reasonable
                         Contemplation...................................................................................... 23

i

IV.    Even if Section 1782's Statutory Requirements Are Met, the Court Should
Exercise its Discretion to Prohibit a Premature Fishing Expedition When There
Is No Evidence BOC Transacted Business Through *Any* Bank in this District................ 27

CONCLUSION........................................................................................................................ 28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Australia and New Zealand Banking Group Ltd. v. APR Energy Holding Ltd.*,
No. 17-mc-00216 (VEC), 2017 WL 3841874 (S.D.N.Y. Sept. 1, 2017) .................... 10, 12, 13

*Ayyash v. Crowe Horwath LLP*,
No. 17-MC-482 (AJN), 2018 WL 2976017 (S.D.N.Y. June 13, 2018)................................... 16

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*,
798 F.3d 113 (2d Cir. 2015)................................................................................ passim

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)............................................................................................ 8

*Euromepa, S.A. v. R. Esmerian, Inc.*,
154 F.3d 24 (2d Cir. 1998)................................................................................. passim

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
27 F.4th 136 (2d Cir. 2022) ................................................................................ 24

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017)................................................................................ 16

*In re Application of CBRE Glob. Invs. (NL) B.V.*,
No. 20-MC-315 (VEC), 2021 WL 2894721 (S.D.N.Y. July 9, 2021)............................... passim

*In Re Asia Maritime Pacific Ltd*,
253 F. Supp. 3d 701 (S.D.N.Y. 2015).................................................................... 25, 27

*In re Del Valle Ruiz*,
342 F. Supp. 3d 448 (S.D.N.Y. 2018), *aff'd sub nom. In re del Valle Ruiz*, 939 F.3d 520 (2d
Cir. 2019)......................................................................................................... 10

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019)................................................................................. 8, 9

*In re Ex Parte Shagang Shipping Co., Ltd.*,
No. 14 MISC. 53-P1 RWS, 2014 WL 1744264 (S.D.N.Y. Apr. 28, 2014)................. 15, 16, 17

*In re Fernando Celso De Aquino Chad*,
No. 19MC261, 2019 WL 2502060 (S.D.N.Y. June 17, 2019) ......................................... 11, 13

*In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*,
No. 15-MC-127 (AJN), 2015 WL 4040420 (S.D.N.Y. June 29, 2015).................................. 17

*In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*,
385 F.2d 1017 (2d Cir. 1967)............................................................................... 24

*In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*,
No. 15-MC-319 (LTS), 2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) ..................................... 16

*In re Schlich for Ord. to Take Discovery Pursuant to 28 U.S.C. §1782*,
   No. 16-MC-319 (VSB), 2017 WL 4155405 (S.D.N.Y. Sept. 18, 2017) ................................. 27

*In re SPS I Fundo de Investimento de Acoes - Investimento no Exterior*,
   No. 22-MC-00118 (LAK), 2022 WL 17553067 (S.D.N.Y. Dec. 9, 2022) ................................ 8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ....................................................................................................... 7

*Matter of Fornaciari for Or. to Take Discovery Pursuant to 28 U.S.C. §1782*,
   No. 17MC521, 2018 WL 679884 (S.D.N.Y. Jan. 29, 2018) .................................................. 11

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015) ..................................................................................... passim

*Pfaff v. Deutsche Bank AG*,
   No. 20 MISC. 25 (KPF), 2020 WL 3994824 (S.D.N.Y. July 15, 2020) ................................... 9

*Roll v. JPMorgan Chase & Co.*,
   No. 20-CV-1090(EK)(AKT), 2020 WL 6545899 (E.D.N.Y. Nov. 6, 2020) ........................... 13

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
   376 F.3d 79 (2d Cir. 2004) ............................................................................................ 7

*Wachovia Bank v. Schmidt*,
   546 U.S. 303 (2006) ..................................................................................................... 14

## Statutes

28 U.S.C. § 1603 ................................................................................................................. 3

28 U.S.C. § 1782 ........................................................................................................... passim

28 U.S.C. § 1782(a) ................................................................................................... 6, 7, 15

## Rules

Fed. R. Civ. P. § 26 ............................................................................................................ 27

Fed. R. Civ. P. § 26(a) ....................................................................................................... 16

# INTRODUCTION

The Application of Mammoet Salvage, B.V. ("**Mammoet**") fails on its face, because it seeks documents and information that are not relevant to any issue in any of the underlying foreign proceedings; and because it seeks impermissible prejudgment asset discovery. Under 28 U.S.C. § 1782, Mammoet seeks to take what amounts to post-judgment discovery concerning an arbitration award (the "**Final Award**" or "**Award**") against Basra Oil Company ("**BOC**") so that it can begin to execute on that Award. This fails Section 1782's statutory "for use in" requirement.

There is no judgment on that Award, anywhere, that Mammoet can execute against, as the validity of the Award presently is being challenged. Indeed, in two of the jurisdictions with underlying proceedings related to the Award—the Netherlands and the Dubai International Financial Centre ("**DIFC**")—BOC is actively challenging or appealing the validity of the Final Award. In the other jurisdiction—Belgium—Mammoet has not even begun any case to enforce the Award. In short, Mammoet is seeking to conduct extensive discovery into BOC's financial assets and information to collect on a judgment that is not yet (and may never be) collectible. Section 1782 does not allow making U.S. courts the base for global, prejudgment fishing expeditions like the one Mammoet is attempting to conduct here.

The Application also fails because none of the respondent banks subject to the Application (except one) is "found" in the Southern District of New York. Mammoet's Application targets correspondent banks of a bank that Mammoet alleges is BOC's Iraqi Bank—the Trade Bank of Iraq ("**TBI**"). But TBI has no branches in the Southern District of New York. And in fact, only one of the correspondent banks of BOC's Iraqi bank have any contact with this District in any way that has anything to do with the information sought. Because all but one of the correspondent banks are not "found" in this District, the Application fails the statutory requirement of Section 1782 that the respondents be "found" in the District in which an application is filed.

Even assuming the Application could satisfy Section 1782's statutory requirements, the Court should nonetheless exercise its broad discretion to deny the Application. Mammoet has presented no evidence whatsoever that BOC has transacted any business with any of the respondent banks. Mammoet's Application amounts to a fishing expedition into the files of banks that are not found within this District, which have no demonstrable direct business with BOC, for the purpose of trying to locate sensitive financial documents and information for use against BOC in execution proceedings that are not yet filed and would not yet be ripe. Mammoet would not be prejudiced if the Court exercises its discretion to deny this Application, as Mammoet would retain the right to re-file Section 1782 applications (1) in the correct jurisdictions in which the respondent banks actually are found; and (2) at the correct time, upon a showing that there is a valid judgment against which Mammoet is capable of executing.

In short, the Court should deny the Application because (1) the Application fails the "for use in" statutory requirement of Section 1782; (2) the Application fails the statutory requirement that the respondents be found in this District; and (3) the Court should exercise its discretion to reject Mammoet's premature fishing expedition for prejudgment discovery to aid in executing against a collectible judgment that does not yet exist.

## BACKGROUND

I. **Mammoet's Application Arises from an Arbitration Award that Is Still Actively Being Litigated.**

BOC is an agency or instrumentality of Iraq. Loftis Decl. ¶¶ 5–7,[1] Exs. 1–3. Disputes

---

[1] This Memorandum of Law refers to evidence in four declarations and their exhibits: the Declaration of Kartik Rajpal ("**Rajpal Decl.**"); James L. Loftis ("**Loftis Decl.**"); Remme Verkerk ("**Verkerk Decl.**"); and Roel Fransis ("**Fransis Decl.**"). Exhibits are cited: "[[Declarant] Decl. Ex. [__]]".

In addition, absent an express waiver in writing signed by persons duly authorized by BOC to execute such waiver, as a "foreign state" under the Foreign Sovereign Immunities Act (28 U.S.C.

between BOC and Mammoet were arbitrated (Declaration of Daniel Morris ¶5, ECF Doc. 3[2]

("**Morris Decl.**")) in an arbitration seated in the DIFC. Loftis Decl. ¶ 22; *see* Verkerk Decl. Ex.

III at 4 ¶ 7. In November 2021, the arbitrators issued a Final Award[3] favoring Mammoet and a

Counterclaim Award favoring BOC. Morris Decl. ¶ 5. The Application relates to court proceedings

regarding the Final Award in three foreign jurisdictions: the DIFC, the Netherlands, and Belgium.

The DIFC is an "offshore" jurisdiction, located entirely within the territory of the United

Arab Emirates ("**UAE**"), with its own commercial laws and court system. Loftis Decl. ¶¶ 10–16,

19–20. The DIFC Arbitration Law is applied by the DIFC Courts and applies to the enforcement

or vacatur of arbitration awards in the DIFC. *Id.* ¶¶ 19–20. DIFC court judgments are not

automatically enforceable in the UAE at large. *Id*. ¶¶ 21, 58, Ex. 11 at 5–6. A separate process is

required for DIFC court judgments to become judgments of courts in the UAE, outside the DIFC.

*Id*. ¶¶ 21, 58, Ex. 11 at 5–6.

There are two closely linked proceedings in the DIFC courts with respect to the Final

Award. *See* Morris Decl. ¶¶ 7, 9; Loftis Decl. ¶¶ 22–56. They are effectively mirror images of each

other: one is BOC's application to set aside the Final Award; one is Mammoet's motion to enforce

it. Morris Decl. ¶¶ 7, 9. Those two proceedings were filed about a year apart. *Id.* First, BOC moved

in February 2022 to set aside (*i.e.*, vacate) the Final Award. Morris Decl. ¶ 7; Loftis Decl. ¶ 22. In

---

§ 1603 et seq.) ("FSIA"), BOC reserves all its rights under the FSIA, and does not waive
whatsoever any immunity for itself, or for its revenues, assets or properties, from service of
process, from suit, jurisdiction, or attachment prior to judgment, or attachment in aid of execution
or enforcement.

[2] ECF citations are to the pages as filed stamped.

[3] Defined terms are from Mammoet's Memorandum of Law In Support of Petitioner's *Ex Parte*
Application For An Order to Take Discovery for Use In Foreign Proceedings Pursuant To 28
U.S.C. § 1782, ECF Doc. 2 ("**Pet'r's Mem. of Law, ECF Doc. 2**"), unless defined otherwise in
this Response.

3

February 2023, the DIFC Court of First Instance refused to set aside the Final Award, and BOC sought permission to appeal that decision in March 2023. Loftis Decl. ¶¶ 25, 30–32. That proceeding remains pending. *Id.* ¶ 33. Second, Mammoet moved in March 2023 to enforce the Final Award. Morris Decl. ¶ 9[4]. That motion to enforce was granted. Loftis Decl. ¶ 44, Ex. 9. But that proceeding also remains pending, as BOC has moved to set aside that enforcement order. Loftis Decl. ¶ 47. BOC's motion to set aside that enforcement order is currently pending. *Id.* ¶¶ 47, Ex. 10.

In Belgium, in May 2022, based on sums allegedly due per the Final Award (Fransis Decl. ¶ 4, Ex. 1 at 10), Mammoet caused a so-called conservatory garnishment to issue against a putative third-party creditor of BOC. Morris Decl. ¶10; Fransis Decl. ¶ 4. The garnishee is a Belgian company called BP Iraq, N.V. ("**BP Iraq**"). Morris Decl. 10; Fransis Decl. ¶4, Ex. 1 at 9. Mammoet's conservatory third-party garnishment did not seek to determine whether the Final Award was valid. *See* Fransis Decl. ¶¶ 15–18. Indeed, such a garnishment proceeding cannot legally determine the validity of an arbitration award under Belgian law. *Id.* On May 30, 2022, the conservatory garnishment terminated, as BP Iraq declared that it owed no goods or sums to BOC. *See* Morris Decl. ¶ 10; Fransis Decl. ¶¶ 9, 11–12, Exs. 2, 3 at 5. BOC's Belgian counsel knows of no pending action against BOC regarding the BP Iraq garnishment. Fransis Decl. ¶¶ 13–14.

In the Netherlands, on May 17, 2022, Mammoet filed an *ex parte* application for garnishment, seeking to garnish property against two Dutch-incorporated companies that it alleged

---

[4] The Morris Declaration states that Mammoet instituted proceedings "in the UAE to have the Final Award recognized against BOC." (Morris Decl. ¶ 9) But that is not correct, as the only proceeding begun on March, 2, 2023 was in the DIFC, not the UAE. (*See* Loftis Decl. ¶ 40, Ex. 8)

to be creditors of BOC.[5] Morris Decl. ¶ 8; Verkerk Decl. ¶ 7, Ex. III at ¶ 20. In its application, Mammoet alleged that the application was based on alleged sums that were due per the Final Award. Verkerk Decl. ¶¶ 5–6, Ex. III at ¶ 6. The next day, on May 18, 2022, a Dutch court granted leave for garnishment. Verkerk Decl. ¶ 14, Ex. V at 3, ¶ 1. As a matter of Dutch law, the garnishment proceeding was concluded when the Dutch court issued leave for garnishment. Verkerk Decl. ¶ 19.

Under Dutch law, Mammoet was required to bring court proceedings to recognize and enforce the Final Award. Morris Decl. ¶ 8; Verkerk Decl. ¶ 16. Mammoet did so in March 2023. Morris Decl. ¶ 8; Verkerk Decl. ¶ 22, Ex. VI. In that proceeding, the issue to be decided is whether the Final Award complies with the New York Convention and Dutch Law implementing the New York Convention. Verkerk Decl. ¶ 22–29. Dutch law strictly confines the issues in that enforcement proceeding to the conduct of the arbitration and its compliance with public policy. *Id.* ¶ 32. That case does not, and could not, deal with specific assets of BOC. *Id.* ¶¶ 30, 33–34. Only if the Final Award is recognized and made a judgment by a Dutch court can assets of BOC be in issue in the Dutch proceedings. *Id.* And even at that later, hypothetical, judgement-execution stage, a Dutch court would deal only with assets in the Netherlands. *Id.* ¶¶ 33–34. To date, no Dutch Court has reduced the Final Award to judgment, and no Dutch proceeding presently is adjudicating the assets of BOC. *See* Morris Decl. ¶ 8 (noting that enforcement hearing is "expected to take place within the next few months"); Verkerk Decl. ¶ 34.

---

[5] Mammoet named two Netherlands-incorporated garnishees: ENI Iraq, B.V. and Bashneft International B.V. ("**Bashneft**"). Morris Decl. ¶ 8. According to Mammoet, the garnishment against ENI Iraq. B.V. was "not successful." *Id.*

II.    **The Application Seeks BOC's Financial Documents and Information to Execute Against BOC Even Though There Is No Judgment Arising from the Award That Is Capable of Being Executed Against.**

On the face of its Application, Mammoet states that the discovery it seeks in this proceeding "is intended to develop evidence" of the following documents and information of BOC: (1) BOC's bank accounts; (2) the location of BOC's assets; (3) BOC's trading partners; (4) BOC's financial conveyances related to efforts "to evade execution"; and (5) whether BOC is employing related parties or trading partners in an effort "to evade execution." ECF Doc. 2, Pet. Mem. of Law at 10. In Mammoet's own words, "[t]his discovery is intended to develop evidence . . . to locate BOC's assets" in an alleged attempt to use that evidence against BOC in other proceedings. *Id.* at 10. In short, Mammoet's express purpose in filing the Application is to discover documents and information about BOC's assets and finances, for the express purpose of using those documents and information in proceedings against BOC, to ultimately seize those assets and finances of BOC in satisfaction of an anticipated executed judgment against BOC. As described above and in more detail below, that discovery is predicated upon Mammoet being able to execute against a judgment arising from the Final Award, but no judgment that can be executed against has been issued in any of the underlying proceedings giving rise to the Application.

## LEGAL STANDARD

To obtain discovery under 28 U.S.C. § 1782, an applicant must establish three statutory prerequisites: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (alterations omitted); 28 U.S.C. § 1782(a).

Even if an applicant establishes the statutory grounds, a court need not order the requested discovery. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). The Court has broad discretion to grant or deny discovery, based on four factors in the Supreme Court's *Intel* case: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264–65. In addition to the *Intel* factors, a court must consider whether the request would further "the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004).

## ARGUMENT

### III.   The Application Fails Section 1782's Statutory Requirements.

#### A.   None of the Correspondent Banks—aside from Citibank—Are "Found" in the Southern District of New York.[6]

##### i.   The Five Foreign Correspondent Banks Are Not "Found" in this District.

Mammoet has failed to show that the five, foreign correspondent banks are found in the Southern District of New York: (1) Commerzbank AG; (2) MashreqBank PSC; (3) MUFG Bank Ltd.; (4) Standard Chartered Bank; and (5) UniCredit Bank AG (the "**Five Foreign**

---

[6] While Citibank is found in this District, Mammoet's Application fails for other reasons set forth below.

Correspondent Banks").[7] For that reason alone, the Application fails as to each of those five banks.

Section 1782's first statutory prong requires that the discovery being sought is from a person or entity residing or found in the district. *Mees*, 793 F.3d at 297. That requirement "extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019). That is, for a person to be "found" in a district for purposes of Section 1782, there must be general jurisdiction or specific jurisdiction in the district over that person. *Id.* at 528–29. Mammoet has not met its burden to establish either general jurisdiction or specific jurisdiction as to any of the Five Foreign Correspondent Banks.

General jurisdiction only exists where a company (1) is incorporated or (2) maintains its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014). Mammoet has not even asserted—let alone established with competent evidence—that the Five Foreign Correspondent Banks are incorporated in or have their principal place of business in the Southern District of New York. *See* Morris Decl. ¶¶ 13–19. As such, the Five Foreign Correspondent Banks cannot be "found" in this district based on a general jurisdiction analysis.

Specific jurisdiction in the context of Section 1782 applications considers the nexus between the subpoena target's contacts with the forum and the availability of the evidence being sought: "the court must: (i) first assess the connection between the nonparty's contacts with the forum and the order at issue and (ii) then decide whether exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice." *Pfaff v. Deutsche Bank AG*, No.

---

[7] BOC has standing to argue that the Named Correspondent Banks are not "found" in this District. *See In re SPS I Fundo de Investimento de Acoes - Investimento no Exterior*, No. 22-MC-00118 (LAK), 2022 WL 17553067, at *3 (S.D.N.Y. Dec. 9, 2022) ("Intervenors have standing to challenge whether [a subpoena target] 'resides' or is 'found' in this district because that is a prerequisite for this Court's grant of discovery under the statute.").

20 MISC. 25 (KPF), 2020 WL 3994824, at *8 (S.D.N.Y. July 15, 2020) (alterations omitted) (citations omitted). As to the first prong, there are two tests, depending on the level of contact with the forum. Where there are only minimum contacts, "the respondent's having purposefully availed itself of the forum *must be the primary or proximate reason that the evidence sought is available at all*." *In re del Valle Ruiz*, 939 F.3d at 530 (emphasis added). When the respondent's contacts are "broader and more significant, a petitioner need demonstrate only that *the evidence sought would not be available but for the respondent's forum contacts*." *Id.* (emphasis added). Because Mammoet has not shown "broad[] or more significant" contacts for any of the Five Foreign Correspondent Banks, Mammoet must demonstrate that the banks "having purposefully availed [themselves] of the forum . . . [is the] primary or proximate reason that the evidence sought is available at all." *Id.*

In *Pfaff*, the petitioner sought discovery of trades that "occurred largely through COMEX, which operates in New York, New York." 2020 WL 3994824, at *10. The court held that "trading securities or commodities on an exchange in the forum subjects the defendant to specific personal jurisdiction." *Id.* This robust, continuous activity "satisfied [the court] that the discovery material sought — which largely relates to [the respondents'] silver trading through COMEX proximately resulted from the respondent's forum contacts." *Id.* Mammoet has not alleged or shown that such a close nexus exists between the information sought and the Five Foreign Correspondent Banks' contacts with this District.

Mammoets' two-part argument fails for each of the Five Foreign Correspondent Banks. First, Mammoet contends that each Foreign Correspondent Bank, "maintains a branch office" in this District. Pet'r's Mem. of Law, at 9–10, ECF Doc. 2. Second, Mammoet contends that each bank, from their Southern District location, "transacted transfers to and from TBI, which

transactions relate to the issues Mammoet seeks to evidence with this discovery, e.g., the location of BOC assets and the extent to which Iraqi governmental entities controlled BOC." Pet'r's Mem. of Law, at 13–14, ECF Doc. 2. Neither allegation establishes specific jurisdiction.

First, the mere existence of a bank's branch in the Southern District does not establish specific personal jurisdiction. *See In re Del Valle Ruiz*, 342 F. Supp. 3d 448 (S.D.N.Y. 2018), *aff'd sub nom. In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) (refusing to find general or specific jurisdiction over a bank with branches in New York City); *Australia and New Zealand Banking Group Ltd. v. APR Energy Holding Ltd.*, No. 17-mc-00216 (VEC), 2017 WL 3841874 (S.D.N.Y. Sept. 1, 2017) (same).

Second, Mammoet has failed to provide evidence establishing the second point. But even if it had, that argument would still fail. TBI's website shows it has no branches in the United States. *See* Rajpal Decl. ¶¶ 8–9, Ex. 6, 7. And the allegation that ***TBI*** might have made transactions through New York branches is insufficient to establish specific personal jurisdiction with respect to ***BOC's*** assets or fund flows. Mammoet alleges that TBI is "the government's trade-finance arm." Morris Decl. Ex. 1, ECF Doc 3–1; Morris Decl. Ex. 2, ECF Doc. 3–2. But Mammoet has presented no evidence that BOC has an account with TBI, or that BOC uses TBI for international transfers. *See* Pet'r's Mem. of Law, at 9, ECF Doc. 2 (stating only that "TBI . . . plays a vital role in international transfers by entities *such as* BOC") (emphasis added). The assertion that TBI "handles all transactions for Iraqi state-owned enterprises" in general says nothing about BOC specifically; and it rests only on information and belief. *Id.* at 9. Any purported nexus between documents relating to BOC (as opposed to TBI itself) and the Five Foreign Correspondent Banks' contacts to the Southern District of New York is entirely speculative.

But even assuming *arguendo* that BOC has accounts with TBI, Mammoet's link to the Five Foreign Correspondent Banks still fails. The Five Foreign Correspondent Banks do not perform U.S. Dollar transactions with TBI. Mammoet's own evidence shows this. *See* Morris Decl. Ex. 1 at 3–4, ECF Doc 3–1. None of the Five Foreign Correspondent Banks perform any U.S. Dollar transactions with TBI. For example, JPMorgan SE performs SWIFT transactions with TBI only in Euros. *See id.* at 3. Mammoet tries to soft pedal this, alleging that these banks "primarily transact in currencies other than US dollars . . . ." Pet'r's Mem. of Law, at 9, ECF Doc. 2. Mammoet's own document, however, shows that each Foreign Correspondent Bank does no U.S. Dollar transaction with TBI. *See* Morris Decl. Ex. 2 at 3–4, ECF Doc. 3–2 (showing all banks except Citibank NA New York and JP Morgan Chase Bank National Association do no SWIFT SSI transactions with TBI in U.S. Dollars).

Vague assertions that TBI's U.S. Dollar transactions might pass through New York are not sufficient to establish Section 1782's specific jurisdiction nexus requirement. That is shown by recent authority from within this District rejecting 1782 applications. For example, in *In re Fernando Celso De Aquino Chad*, the applicant sought logs of wire transfers where the subpoena targets (including non-New York headquartered banks) allegedly were acting as intermediary or correspondent banks "for U.S. dollar-denominated wire transfers . . . where funds are believed to be held in the names of the [ultimate defendant]." No. 19MC261, 2019 WL 2502060, at *2–3 (S.D.N.Y. June 17, 2019). However, because the applicant made "no allegations that any of these wire transfers are directed at or from New York" the court concluded that the Section 1782 requirements had not been met. *Id.* at *3.[8] Here too, Mammoet has failed to make any allegation,

---

[8] *See also Matter of Fornaciari for Or. to Take Discovery Pursuant to 28 U.S.C. §1782*, No. 17MC521, 2018 WL 679884, at *2 (S.D.N.Y. Jan. 29, 2018) (holding that a bank with "offices in this District" was not found in the district because "aside from speculation, Fornaciari does not

much less prove any facts, that BOC funds have specifically been directed via TBI to or from the New York branches of any of the Five Foreign Correspondent Banks.

In addition, even if (contrary to the evidence) TBI did dollar-based transactions with the Five Foreign Correspondent Banks, that also would not establish specific personal jurisdiction. Mammoet has not produced any evidence that purported transfers "to and from TBI" (Pet'r's Mem. of Law, at 9, ECF Doc. 2) were for BOC's account. Unless these transfers can be connected with BOC, Mammoet's specific jurisdiction argument fails to establish the required nexus. *See Australia and New Zealand Banking Group Ltd*, 2017 WL 3841874, at *5 (holding that "'conclusory allegations' or 'mere speculations or hopes that jurisdiction exists'" were insufficient to even grant "limited jurisdictional discovery to develop facts in support of specific jurisdiction . . . for 1782 subpoenas," let alone find specific personal jurisdiction over the subpoena target).

In *Australia and New Zealand Banking Group*, the subject matter of the requested discovery concerned turbines in Australia that were leased to an Australian company that received loans from an Australian bank and went into bankruptcy in Australia. *Id.* Further, none of the requested discovery was located in the United States, and there was no factual evidence on the record "connecting ANZ Bank's New York branch office with the underlying facts of the case beyond the possibility that [certain] funds transferred . . . might have passed through New York." *Id.* (emphasis omitted). On those facts, the 1782 application was rejected. The same reasoning applies here. Mammoet has failed to demonstrate, through any factual evidence, that the New York branches of any of the Five Foreign Correspondent Banks are in any way connected to the

---

explain what [the bank's] relevant contacts with the forum are or how the requested discovery arises from or relates to these contacts").

underlying facts of court proceedings abroad, or to the availability of the evidence it seeks. Therefore, like *in Australia and New Zealand Banking Group* and *In re Fernando Celso De Aquino Chad*, Mammoet has not established specific jurisdiction over the Five Foreign Correspondent Banks.

Because the nexus between the Five Foreign Correspondent Banks' contacts in this District and the information being sought is speculation, Mammoet has failed to demonstrate that the Five Foreign Correspondent Banks are "found in" the Southern District of New York. Accordingly, the Application, as against the Five Foreign Correspondent Banks, should be dismissed.

### ii.     JPMorgan Chase Bank National Association Is Not "Found" in this District.

As for JPMorgan Chase Bank National Association ("**JPMCB N.A.**"), Mammoet contends that general jurisdiction lies because "JPMorgan's headquarters and principal place of business are located at 383 Madison Avenue, New York, N.Y." Pet'r's Mem. of Law, at 13, ECF Doc. 2 (citing Morris Decl., ¶ 14). That may be true for ***other members*** of the JP Morgan Chase bank family. But JPMCB N.A.'s "main office" is "in the City of Columbus, County of Franklin, State of Ohio." *See* Rajpal Decl. ¶ 3, Ex. 1; *id.* ¶ 6, Ex. 4 [FDIC Screenshot] (describing "1111 Polaris Pkwy Columbus, OH 43240" as "JPMorgan Chase Bank, National Association['s]" "Main Office Address"); *see also Roll v. JPMorgan Chase & Co.*, No. 20-CV-1090(EK)(AKT), 2020 WL 6545899, at *1 (E.D.N.Y. Nov. 6, 2020) (describing that while "JPMorgan Chase & Co." is "headquartered in New York City," JPMorgan Chase Bank, National Association's "status [is] as an Ohio citizen"). Therefore, JPMCB N.A.'s headquarters and main office principal place of

13

business is not in the Southern District of New York, it is not incorporated in the Southern District of New York, and this Court does not have general personal jurisdiction over JPMCB N.A.[9]

In the alternative, Mammoet argues that "JP Morgan has offices within this judicial district from which JP Morgan transacted transfers to and from TBI, which transactions relate to the issues Mammoet seeks to evidence with this discovery, e.g., the location of BOC assets and the extent to which Iraqi governmental entities controlled BOC." Pet'r's Mem. of Law, at 13, ECF Doc. 2. This bare, conclusory allegation is not supported by evidence and is substantively identical to the assertions made as to the Five Foreign Correspondent Banks. It fails for the same reasons.

Finally, assuming *arguendo* that BOC has an account with TBI, the fact that JPMCB N.A. does U.S.-Dollar transactions with TBI (*see* Pet'r's Mem. of Law, at 13, ECF Doc. 2), says nothing about the location of BOC's assets. Therefore, Mammoet has failed to establish specific jurisdiction over JPMCB N.A.

### iii.   Three of TBI's Correspondent Banks Are Unnamed and Not Found Within this District.

Mammoet must demonstrate that each subpoena target "resides or is found" in the Southern District of New York. 28 U.S.C. § 1782. But the Application omits three of TBI's correspondent banks: (1) The Saudi National Bank, Riyadh, Saudi Arabia; (2) Sohar International Bank SAOG, Muscat, Oman; and (3) J.P. Morgan SE (the "**Unnamed Correspondent Banks**"). Pet'r's Application, at 1, ECF Doc. 1. This is not oversight. Mammoet admits in its Memorandum of Law that two of the Unnamed Correspondent Banks are not incorporated and do not have their principal place of business or branches in this District. *See* Pet'r's Mem. of Law, at 9, ECF Doc. 2 ("Each

---

[9] The Supreme Court has held that a "National Association" like JPMCB N.A. is a "citizen of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006).

of these banks *other than Sohar International Bank SAOG and the Saudi National Bank* maintain branch offices or their principal place of business within the Southern District of New York") (emphasis added). The third, JP Morgan SE, is similarly situated. JP Morgan SE is a legal entity, distinct from JPMCB NA. JP Morgan SE is "headquartered in Frankfurt, Germany [with] a branch network across the European Economic Area (EEA), with significant operations in Dublin, Luxembourg and Paris." Rajpal Decl. ¶7, Ex. 5. As such, none of the three Unnamed Correspondent Banks fulfil the "found in" requirement of Section 1782.

**B.    The Discovery Mammoet Seeks Under Section 1782 Is Not for Use in a Proceeding in a Foreign or International Tribunal.**

Mammoet's Application also fails the second statutory requirement that the discovery it seeks be "for use in a proceeding before a foreign or international tribunal." *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (internal brackets omitted).

Courts applying that statutory language have established a number of rules that cut off the availability of Section 1782 in proceedings like this one:

- *First*, the foreign proceeding must be "adjudicative in nature." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998).

- *Second*, "pre-judgment asset discovery . . . is plainly impermissible." *In re Application of CBRE Glob. Invs. (NL) B.V.*, No. 20-MC-315 (VEC), 2021 WL 2894721, at *8 n.11 (S.D.N.Y. July 9, 2021); *see also In re Ex Parte Shagang Shipping Co., Ltd.*, No. 14 MISC. 53-P1 RWS, 2014 WL 1744264, at *2 (S.D.N.Y. Apr. 28, 2014) ("[P]re-judgment discovery concerning an opposing party's assets 'is not permitted . . . unless it is relevant to the merits of a claim . . . .'").

- *Third*, Section 1782 requires compliance with the Federal Rules of Civil Procedure. 28 U.S.C. § 1782(a) (requiring "the document or other thing" to be "produced, in

15

accordance with the Federal Rules of Civil Procedure."); *In re Ex parte Shagang Shipping*, 2014 WL 1744264, at *1 (citing cases for same). The Federal Rules of Civil Procedure require discovery to be "regarding any matter . . . that is relevant to *a claim or defense of any party*." Fed. R. Civ. P. 26(a) (emphasis added).

- *Fourth*, an applicant's mere assertion that evidence is "highly relevant" does not by itself suffice to permit Section 1782 discovery. *See Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P*., 798 F.3d 113, 120 (2d Cir. 2015).

- *Fifth*, relevance alone does not suffice. A "key" additional question is whether the applicant can actually use the information in the foreign proceeding. *Id.* at 120. Section 1782 requires the "*practical ability* of an applicant to place a beneficial document—or the information in contains—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017) (emphasis in original).

- *Sixth*, a fishing expedition fails the "for use" requirement. *See Ayyash v. Crowe Horwath LLP*, No. 17-MC-482 (AJN), 2018 WL 2976017, at *3 (S.D.N.Y. June 13, 2018) (noting that documents sought for the purpose of determining which parties the applicant could sue in the foreign proceedings amounted to a fishing expedition); *In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, No. 15-MC-319 (LTS), 2015 WL 5824505, at *3 (S.D.N.Y. Oct. 6, 2015) (finding that document requests targeting multiple banks for the disclosure of financial transactions and other information was "an archetypal fishing expedition designed to locate assets to satisfy the English court judgment"); *In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*, No. 15-MC-127 (AJN), 2015 WL 4040420, at *7 (S.D.N.Y.

16

June 29, 2015) (holding that discovery requests seeking to locate an award debtor's bank accounts in order to enforce the award, amounted to a fishing expedition).

- *Finally*, if the foreign proceeding is not actually pending when the application is filed, the contemplated proceeding must be "within *reasonable* contemplation." *See Certain Funds*, 798 F.3d at 123 (emphasis in original). A Section 1782 applicant must show "more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated." *Id*. Speculation about instituting proceedings does not suffice. *Id.* at 124. An applicant must show, "some concrete basis from which [the court] can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id.*

The foreign proceedings—in the DIFC, Belgium, and the Netherlands—each fail to fulfill one or more of those requirements.

### i.    The Documents and Information Sought Are Not "for use in" the DIFC Court Proceedings.

#### a.    Because there is no DIFC judgment on which execution can be levied, discovery for asset-collection purposes is barred.

Mammoet anchors its request on two proceedings concerning the Final Award in the DIFC court: (1) BOC's set-aside/vacatur proceeding ("**Set Aside Proceeding**") (*See* Loftis Decl. ¶¶ 22–39) and (2) Mammoet's later award-enforcement proceeding ("**Enforcement Proceeding**", together, the "**DIFC Court Proceedings**"). *See* Loftis Decl. ¶¶ 40–56. *See* Pet'r's Mem. of Law, at 3, ECF Doc. 2.

Mammoet concedes it is attempting to use Section 1782 to determine the location of BOC's assets. Pet'r's Mem. of Law at 6. As set out immediately above prejudgment asset discovery is foreclosed. *In re Application of CBRE*, 2021 WL 2894721, at *8 n.11; *see also In re Ex Parte Shagang Shipping*, 2014 WL 1744264, at *2. There is no judgment of the DIFC Courts in the

17

DIFC Court Proceedings upon which execution can be levied. *See* Morris Decl. ¶ 7; *see* Loftis Decl. ¶¶ 25–26, Ex. 6. Namely, execution is not at issue for the judgment refusing to set aside the Final Award (the "**ARB 004-2022 Judgment**,") because that judgment does not declare any sums due at all and reserves costs for a related motion to be dealt with separately; and because the ARB 004-2022 Judgment is currently pending on appeal. Morris Decl. ¶ 7; *see* Loftis Decl. ¶¶ 27, 30, 33–34, Ex. 7. Nor is execution for the order permitting enforcement of the Final Award (the "**ARB 005-2023 Order**") (Loftis Decl. Ex. 9). The ARB 005-2023 Order expressly states, "enforcement proceedings may not be commenced until after . . . any application made by [BOC] within 14 days of service of this Order . . . has been finally disposed of." The ARB 005-2023 Order was served on March 30, 2023 (Loftis Decl. ¶ 45), and BOC timely moved to set aside that order. Loftis Decl. ¶¶ 46–47, Ex. 10. Enforcement proceedings may not commence until that currently pending motion to set aside is finally disposed of. Loftis Decl. Ex. 9 at 3 (¶ 6).  In sum, because there is no judgment of the DIFC Courts upon which execution can be levied, discovery seeking the location of BOC's assets for collection purposes—the precise discovery sought by Mammoet here—is not permitted.

In sum, BOC has appealed the ARB 004-2022 Judgment, Loftis Decl. ¶¶ 27–34, Ex. 7; and, as noted above, moved to set aside the ARB 005-2023 Order. *See* Loftis Decl. ¶¶ 47–50. In that appeal, the issue of Mammoet's entitlement to any sum is being actively litigated. If BOC succeeds in either of those proceedings, Mammoet will not be entitled to any asset-collection information. That is precisely the reason why courts do not allow pre-judgment discovery about collection in Section 1782 proceedings, and precisely the reason (among others) why Mammoet's Application fails.

        **b.**     **Information concerning BOC's assets, bank accounts, and trading partners is irrelevant and not useful to the claims and defenses at issue in the DIFC Court Proceedings.**

Section 1782's "for use" language requires that the information sought must be relevant to the parties' claims and defenses in the underlying proceeding and that a party can make some practical use of the information in the underlying proceeding. *See Certain Funds*, 798 F.3d at 120. Here, the information sought is not even of "de minimis" relevance because information from TBI's correspondent banking transactions are not and cannot be relevant in the DIFC Court Proceedings, as such information is not "something that will be employed with some advantage or serve some use in the proceeding." *Mees*, 793 F.3d at 298; *see also In re Application of CBRE*, 2021 WL 2894721, at *7 (limiting the relevance of information sought by Section 1782 to information that could "be made use of in the foreign proceeding to increase her chances of success").

In the DIFC Set Aside Proceedings, the parties' claims and defenses are strictly limited to those set out in DIFC Arbitration Law Article 41(2): (1) capacity of the parties or the validity of the arbitration agreement; (2) notice of the proceedings or a party's ability to present his case; (3) the terms of the submission to arbitration; (4) proper composition of the tribunal; (5) whether DIFC Law permits arbitration based on the subject matter of the dispute; (6) express referral of the dispute to a different body or tribunal; and (7) whether the award is contrary to UAE public policy. *See* Loftis Decl. ¶ 31, Ex. 5.[10] Information regarding BOC's assets, allegedly made via TBI's transactions with correspondent banks in New York, has nothing to do with those claims and

---

[10] These grounds are virtually identical to the reasons that a court can refuse to enforce an arbitration award under Article V of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 ("**New York Convention**").

defenses. Mammoet has not alleged any connection to those claims and defenses, because it cannot. Not only is the information irrelevant to any claims or defenses in the Set Aside Proceedings, Mammoet could not use any such information to its advantage in the Set Aside Proceedings. This applies with even greater force in the current appeal of the ARB 004-2022 Judgment, where the claims and defenses are a smaller subset of the grounds to set aside, (*see* Loftis Decl. ¶¶ 28–35, Ex. 7), and the record is further restricted. *See id.* ¶¶ 35–39. Indeed, per the DIFC Rules of Court, all documents extraneous to the issues on appeal "must be excluded." *Id.* ¶ 37.

In the Enforcement Proceedings, the defenses to enforcement are strictly limited to the virtually identical reasons to set aside an award. *See id.* ¶ 50, Ex. 5 Art. 44(1).[11] BOC's recourse against the ARB 005-2023 Order to enforcement was accordingly strictly limited to a subset of those reasons, which did not concern BOC's assets. *See id.* ¶¶ 50–53. In sum, the information Mammoet seeks is just as irrelevant to the Enforcement Proceedings as with the Set Aside Proceedings; and Mammoet equally could not make use of any such information in the Enforcement Proceedings.

Finally, because the DIFC's execution power is limited to the DIFC itself, information about TBI's transactions with banks *in New York*, would be irrelevant and could not be of practical use in the execution of a judgment in the DIFC, as none of the correspondent banks are

---

[11] DIFC Arbitration Law 44(1)(a) limits the issues for refusing enforcement of an award to: (1) capacity of the parties or the validity of the Arbitration agreement; (2) notice of the proceedings or the party's ability to present his case; (3) the terms of the submission to Arbitration; (4) proper composition of the tribunal; (5) whether the award has been set aside or suspended; (5) whether DIFC Law permits arbitration based on the subject matter of the dispute; and (7) whether the award is contrary to United Arab Emirates public policy.

headquartered in the DIFC. *See id.* ¶¶ 57–58. This reasoning also applies to any bank outside the DIFC, but in the UAE at large. *See id.* ¶59.

> **ii.    The Documents Sought Are Not "for use in" the Proceedings in the Netherlands.**

In addition to the garnishment action against Bashneft and ENI Iraq, the second proceeding in the Netherlands is the currently pending proceeding to enforce the Final Award in Dutch Court. Both fail Section 1782's requirement that the information sought be "for use in foreign proceedings."

> **a.    The Attachment Case in The Netherlands Has Concluded and Was Not Adjudicative in Nature.**

Because the Dutch Third-Party Pre-Judgment Attachments[12] have concluded, neither is a predicate foreign action for Section 1782 purposes.

In ruling on a Section 1782 application, a court must consider whether "there is actually a foreign proceeding." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). In answering that question, the Court "may properly look to foreign law." *Id.* at 28. Under Dutch law, the Third-Party Pre-Judgment Attachment against Bashneft concluded when Bashneft delivered its declaration. Therefore, with that proceeding concluded, it is not possible to adduce evidence in that case. Verkerk Decl. ¶¶ 19–20.

Indeed, even when the Pre-Judgment Attachment was pending, it was not "adjudicative in nature." *Euromepa, S.A. v. R. Esmerian, Inc*., 154 F.3d at 27. That is because an attachment is levied by a bailiff, who does not adjudicate a party's entitlement to sums, and is made without real judicial scrutiny. Verkerk Decl. ¶¶ 10, 15, 17. Given the status and nature of the Attachment Case, it cannot support Mammoet's Application.

---

[12] The attachment against ENI Iraq was "not successful." Morris Decl. ¶ 8.

**b.**   **The Recognition and Enforcement Case Fails the "for use in" Requirement for Multiple Reasons.**

Mammoet has also raised its enforcement action as a justification for the Section 1782 discovery it seeks. Morris Decl. ¶ 9. That, too, fails.

First, Mammoet's own application for recognition of the arbitral award in the Netherlands states that "there are no grounds for refusal," to enforce the Final Award. Verkerk Decl. Ex. VI, ¶ 26. On Mammoet's own case, no further information could be of use. As the Second Circuit stated in *Euromepa*, "discovery certainly could not be 'for use in' the French Supreme Court appeal if that court does not take and hear new evidence." 154 F.3d at 29. All that is required—or even pertinent—for this action is the Final Award itself and the arbitration agreement on which the arbitration was based. *See* Verkerk Decl. ¶ 24.

As for BOC's defenses to enforcing the Final Award, the reasons under Dutch Law to refuse to enforce the Final Award are virtually identical to those in the DIFC, *i.e.* the reasons set forth in Article V of the New York Convention. *See* Verkerk Decl. ¶ 26 (setting out New York Convention grounds to refuse enforcement). As with the DIFC Enforcement Proceedings, Pt. III.B.i.b *supra*, the sole and exclusive defenses to enforcing the Final Award are the reasons set out in Article V of the New York Convention or identical provisions of Dutch law. *See* Verkerk Decl. ¶¶ 26, 27. A Dutch Court would consider only evidence pertinent to Article V, *id.* ¶ 32, which would not include the evidence Mammoet seeks here. *See id.* ¶ 33. Quite simply, as with the DIFC Enforcement Proceedings, any evidence on BOC's assets, trading partners, and the like would be irrelevant and could not be put to practical use. Loftis Decl. ¶¶ 51–52; Verkerk Decl. 31.

Put another way, if BOC were to challenge the Dutch Recognition and Enforcement case (which Mammoet claims cannot be done), the Dutch Recognition and Enforcement Case would be similar to the French bankruptcy proceeding in *Euromepa*: the merits of the dispute were

adjudicated in the arbitration and the Dutch court would be bound to the Final Award's decisions on the merits of the claim in the underlying arbitration. The only issue would relate the Article V defenses, and no further evidence would be pertinent. *See* Verkerk Decl. ¶¶ 32–33.

The Dutch Recognition and Enforcement case is still pending. *See* Morris Decl. ¶ 8. Because no Dutch Court judgment upon which execution can be levied has yet issued, the only use for the sought-after discovery would have is impermissible pre-judgment asset discovery. *See* Pt. III.A.ii, *supra* and cases cited therein.

Finally, even if the Dutch courts recognized the Final Award and Mammoet were then able to obtain a judgment against BOC, the judgment could only be enforced against assets of BOC in the Netherlands or in a branch of a non-Dutch bank in the Netherlands. *See* Verkerk Decl. ¶ 34. The discovery Mammoet seeks in its Application is "plainly irrelevant" to that hypothetical proceeding. As the Second Circuit noted in *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, though Mammoet can contend that it needs this discovery, "it is difficult to conceive how information that it plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." 798 F.3d at 120 n.7. Mammoet has no use for discovery in relation to the proceedings in the Netherlands.

### iii. The Attachment Proceeding in Belgium Has Concluded, and Alleged Future Proceedings Are Not Within Reasonable Contemplation

Mammoet's final attempt at meeting the adjudicative proceeding prerequisite to section 1782 discovery relates to a "conservatory third-party attachment under BP Iraq N.V." and "contemplate[ed] further actions in Belgium"—neither of which may serve as the underlying proceeding for purposes of section 1782. Pet'r's Mem. of Law, at 8, ECF Doc. 2. First, the Belgium conservatory third-party attachment under BP Iraq N.V. (the "***conservatory garnishment***") is not a proceeding at all because it was not adjudicative in nature. *See* Fransis Decl. ¶¶ 5, 19. The parties'

underlying dispute was finally decided by the arbitrators, and the Final Award is *res judicata* on the merits of that dispute. In this context, a conservatory garnishment, where nothing is decided, cannot qualify as an "'adjudicative' proceeding." *See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022); *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d at 29; *see also*, *In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India,* 385 F.2d 1017, 1020–1021 (2d Cir. 1967) (finding income tax assessment proceeding before an income-tax officer not "adjudicative" because officer was "not acting as judges deciding a litigation between the citizen and the State: they are administrative authorities whose proceedings are regulated by statute"). Section 1782 is "not so broad as to include all the plethora of administrators whose decisions affect private parties and who are not entitled to act arbitrarily, and one useful guideline is the absence of any degree of separation between the prosecutorial and adjudicative functions." *Re Letters Rogatory*, 385 F.2d at 1021. The Belgian conservatory garnishment is similar to the tax official in *Re Letters Rogatory*. A conservatory garnishment is served by a bailiff who lacks any decision-making power. Fransis Decl. ¶ 5. The bailiff is entrusted with specific duties, such as delivering documents by writ or enforcing court orders, but the fact that a bailiff has served a conservatory garnishment does not imply that it has been validated or even authorized by a court. The conservatory garnishment may not serve as the "adjudicative" proceeding required by section 1782 because of the bailiff's essentially executive, rather than adjudicative, function. *See Re Letters Rogatory*, 385 F.2d at 1020–1021. Additionally, the garnishment is not a proceeding because it has concluded. *See* Fransis Decl. ¶¶ 11–12.

Next, there are, to BOC's counsel, no currently pending actions in Belgium. *See* Fransis Dec. ¶¶ 13–14; Loftis Decl. ¶ 63. As a consequence, Mammoet's vague comment that it is "contemplating further actions in Belgium" cannot satisfy the proceeding prerequisite of section

1782 because there is no concrete basis for these actions. The Second Circuit requires, "[a]t a minimum, a § 1782 applicant [to] present . . . *some concrete basis* from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Certain Funds*, 798 F.3d at 118 (emphasis added). Mammoet's evidence regarding the so-called future proceeding amounts to: "Mammoet is contemplating further actions in Belgium." Pet'r's Mem. of Law, at 4, ECF Doc. 2. No evidence has been presented (nor any additional assertions made) to even suggest that a proceeding might ever occur in Belgium. Similar to the applicant in *In Re Asia Maritime Pacific Ltd*, Mammoet "does not 'contemplate' bringing collateral pre- or post-judgment attachment proceedings so much as it hopes to discover assets against which it can bring a pre- or post-judgment attachment proceedings." 253 F. Supp. 3d 701, 708 (S.D.N.Y. 2015). Mammoet's alleged future action is nothing more than a fiction at this point.

Further, Mammoet provides no detail of what the "contemplate[ed] further actions" might claim or even who the action might be initiated against. Mammoet does not even hint at whether the proceeding might involve BP Iraq N.V., Basra Oil Company, or some other entity. Though the bar for relevance between the discovery sought and proceeding is low, there must be at least "*de minimis* showing that the information sought would be relevant to the foreign proceeding." *In re Application of CBRE*, 2021 WL 2894721, at *7 (internal quotations omitted). "[T]he Second Circuit has made clear that the requirements of § 1782 are not satisfied by the requesting party reciting *some minimal relation* to a pending foreign proceeding." *In re Asia Maritime Pacific*, 253 F. Supp. 3d at 706 (emphasis added). There is no way for the Court to even make the relevance determination when Mammoet merely comments that it contemplates some future proceedings, against some entity, regarding some unknown claim. Moreover, the Court cannot determine whether these "further actions" would even qualify as adjudicative proceedings.

Even if the Court could ignore the remote and unfounded nature of the contemplated proceedings in Belgium, the discovery sought is pre-judgment asset discovery. Assuming for argument's sake Mammoet were contemplating an action in Belgium to have the Final Award recognized and enforced, the information requested is premature because, in that hypothetical enforcement proceeding, Mammoet would need to actually have the arbitration award reduced to a Belgian judgment prior to even initiating a **judgment**-enforcement action. *See* Fransis Decl. ¶¶ 15–18. Mammoet is attempting to do exactly what this court prohibits: discover BOC's assets before proving entitlement to such assets. For this reason, Mammoet's discovery "is plainly impermissible." *In re Application of CBRE*, 2021 WL 2894721, at *8 n.11.

Finally, even assuming a Belgian court judgment enforcing the Final Award issued, the discovery here—from correspondent banks in the U.S.—would still be improper. A Belgian judgment-execution proceeding would concern *only* property in Belgium or in a Belgian bank. *See* Fransis Decl. ¶ 6. Mammoet has not attempted to prove otherwise, therefore the discovery cannot be "for use" in some future Belgian proceeding.

This Court should deny discovery based on Mammoet's failure to satisfy the prerequisites to discovery under section 1782. The Second Circuit is clear that "a request that fails to show that the materials sought will be of any use in the foreign proceeding would not satisfy the 'for use' requirement." *Mees*, 793 F.3d at 299 n.10. Mammoet does not attempt to draw any relation to the (many) proceedings it has mentioned in its Application and the extensive discovery it seeks from multiple banks. For many of the set forth proceedings, there is not even an adjudicative proceeding—or even a contemplated proceeding at all. For the proceedings that may even be called such, the discovery sought is wholly impermissible as pre-judgment asset discovery, to which Mammoet might never be entitled to (dependent on the outcome of the DIFC Court Proceedings).

Mammoet has failed to meet the statutory requirements to even *consider* granting a section 1782 application.

Mammoet weakly asserts that—in addition to the DIFC, Netherlands and Belgium—it might be a litigant "potentially elsewhere". Pet'r's Mem. of Law, at 15, ECF Doc. 2. This is even more of a fishing expedition than some hypothetical future case in Belgium. For the reasons set out above, actions "potentially elsewhere" cannot be for use in foreign proceedings under section 1782.

**IV.   Even if Section 1782's Statutory Requirements Are Met, the Court Should Exercise its Discretion to Prohibit a Premature Fishing Expedition When There Is No Evidence BOC Transacted Business Through *Any* Bank in this District.**

Even if Section 1782's statutory "for use" and "found in" requirements were met, the Court has discretion to deny Mammoet's Application. *See Mees*, 793 F.3d at 299 n.10 (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995)). The Court can exercise its discretion to deny Section 1782 applications if the application "unreasonably seeks . . . irrelevant materials." *In re Schlich for Ord. to Take Discovery Pursuant to 28 U.S.C. §1782*, No. 16-MC-319 (VSB), 2017 WL 4155405, at *6 (S.D.N.Y. Sept. 18, 2017) (quoting *Mees*, 793 F.3d at 299 n.10). This requires only that the Court "should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302.

Even assuming that TBI transacts some business with one or more correspondent banks, Mammoet has no evidence whatsoever that **BOC** transacted any business with any of the correspondent banks, and TBI's website shows no branches in the United States. *See* Rajpal Decl. ¶¶ 8–9, Exs. 6, 7. Courts have exercised discretion to deny a baseless fishing expedition. *See*, *e.g.*, *In re Asia Maritime Pacific Ltd.* 253 F. Supp. 3d at 705 ("[T]he subpoenas would direct sixteen

large banks to conduct broad searches for information when the Petitioner has provided *no* basis to believe that [the debtor] ever transacted business through any particular bank.").

Having presented no evidence whatsoever that BOC has transacted any business with any of the respondent banks, Mammoet's Application amounts to a fishing expedition into the files of banks that are not found within this District, which have no demonstrable direct business with BOC, for the purpose of trying to locate sensitive financial documents and information for use against BOC in execution proceedings that are not yet filed and would not yet be ripe. The Court has considerable discretion to deny Mammoet's Application, and the Court should exercise its discretion to do so here. Mammoet would not be prejudiced if the Court exercises its discretion to deny this Application, as Mammoet would retain the right to re-file Section 1782 applications (1) in the correct jurisdictions in which the respondent banks actually are found; and (2) at the correct time, upon a showing that there is a valid judgment against which Mammoet is capable of executing.

## CONCLUSION

For the above stated reasons, this Court should deny the Application for Section 1782 discovery in its entirety.

28

Dated:  May 10. 2023                    Respectfully submitted,
       Houston, Texas

                                                  **VINSON & ELKINS L.L.P.**

                                                  */s/ James L. Loftis*

Jose Sanchez (NY Bar No. 4819082)     James L. Loftis *(Pro Hac Vice)*
Kartik Rajpal (NY Bar No. 5945290)     Texas Bar No. 12491210
1114 Avenue of the Americas            Timothy J. Tyler *(Pro Hac Vice)*
32nd Floor                               Texas State Bar No. 00791833
New York, NY 10036               Matthew Hoffman *(Pro Hac Vice)*
Tel: 212-237-0109                 Texas State Bar No. 24068697
josesanchez@velaw.com          Robert L. Landicho *(Pro Hac Vice)*
krajpal@velaw.com                Texas State Bar No. 24087881
                                  Kylie P. Terry *(Pro Hac Vice)*
                                  Texas State Bar No. 24125712
                                  Andreina Escobar *(Pro Hac Vice)*
                                  Texas State Bar No. 24131797
                                  845 Texas Avenue, Suite 4700
                                  Houston, TX 77002
                                  Tel: 713-758-2222
                                  jloftis@velaw.com
                                  ttyler@velaw.com
                                  mhoffman@velaw.com
                                  rlandicho@velaw.com
                                  kterry@velaw.com
                                  aescobar@velaw.com

                                  *Counsel for Intervenor Basra Oil Company*

## <u>CERTIFICATE OF SERVICE</u>

On the 10th day of May, 2023 a copy of the foregoing instrument was served on all counsel of record via the Court's CM/ECF system.

*/s/ James L. Loftis*
James L. Loftis