**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE APPLICATION OF MAMMOET
SALVAGE, B.V. FOR AN ORDER TO
TAKE DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS PURSUANT
TO 28 U.S.C. § 1782

Case No. 1:23-mc-00073-AT

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S *EX PARTE***
**APPLICATION FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN**
**PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

William T. O'Brien (*pro hac vice*)
John Lomas (*pro hac vice*)
Daniel Morris (*pro hac vice*)
Eversheds Sutherland (US) LLP
700 Sixth St. N.W., Ste. 700
Washington, D.C. 20001
Telephone: (202) 383-0100
Facsimile: (202) 637-3593
williamobrien@eversheds-sutherland.com
danielmorris@eversheds-sutherland.com

Ulyana Bardyn (N.Y. Bar No. 4307633)
Levon Golendukhin (N.Y. Bar No. 5459458)
Eversheds Sutherland (US) LLP
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 389-5000
Facsimile: (212) 389-5099
ulyanabardyn@eversheds-sutherland.com
levongolendukhin@eversheds-sutherland.com

*Counsel for Applicant Mammoet Salvage,*
*B.V.*

March 25, 2023

# <u>TABLE OF CONTENTS</u>

**Page**

Table of Authorities ....................................................................................................... ii

Introduction ..................................................................................................................... 1

Argument and Authority ................................................................................................. 2

      I.      Mammoet's Application satisfies the statutory requirements ................... 2

             A.      The Correspondent Banks are "found" within the Southern District of New York ....................................................................................... 2

             B.      The discovery sought is for use in foreign proceedings ................. 5

             a.      Section 1782 Discovery Is "for use in" in the DIFC and UAE Court Proceedings Notwithstanding BOC's Pending Appeal of its Set-Aside Application ................................................................ 7

             b.      Section 1782 Discovery Is "for use in" in Pending Proceedings in the Netherlands .................................................................... 9

             c.      Section 1782 Is "for use in" Contemplated Proceedings in Belgium ................................................................................. 11

      II.      The Court should exercise its discretion to grant the Application ............ 13

Conclusion ................................................................................................................... 14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abraaj Inv. Mgmt. Ltd.*,
    No. 20-MC-229 (VSB), 2023 U.S. Dist. LEXIS 54296 (S.D.N.Y. Mar. 29,
    2023)................................................................................................................ 3, 4, 13, 14

*Ascom Group S.A., Anatolie Stati, Gabriel Stati and Terra Raf Trans Traiding
    Ltd. v. Republic of Kazakhstan (I)*,
    SCC Case No. 116/2010, Decision of Amsterdam Court of Appeal, 6
    November 2018 ........................................................................................................6

*In re Asia Mar. Pac., Ltd.*,
    253 F. Supp. 3d 701 (S.D.N.Y. 2015) ...................................................................13

*Austl. & N.Z. Banking Grp. Ltd. v. APR Energy Holding Ltd.*,
    No. 17-MC-00216 (VEC), 2017 U.S. Dist. LEXIS 142404 (S.D.N.Y. Sep. 1,
    2017)..........................................................................................................................4

*Catalyst Managerial Servs., DMCC v. Libya Africa Inv. Portfolio (In re Catalyst
    Managerial Servs., DMCC)*,
    680 F. App'x 37 (2d Cir. 2017) .............................................................................14

*In re CBRE Glob. Invs. (NL) B.V.*,
    No. 20-MC-315 (VEC), 2021 U.S. Dist. LEXIS 128412 (S.D.N.Y. July 9,
    2021)...................................................................................................................7, 15

*In re Celso De Aquino Chad*,
    No. 19mc261, 2019 U.S. Dist. LEXIS 100483 (S.D.N.Y. June 17, 2019) .............4

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015) .............................................................................11, 12

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019) ...................................................................................3

*In re Doosan Heavy Indus. & Constr. Co.*,
    No. 19-MC-1638 (LDH), 2020 U.S. Dist. LEXIS 65593 (E.D.N.Y. Apr. 14,
    2020)..........................................................................................................................6

*Euromepa, S.A. v. R. Esmerian, Inc.*,
    154 F.3d 24 (2d Cir. 1998) ......................................................................................5

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
    27 F.4th 136 (2d Cir. 2022) .......................................................................5

*In re Fornaciari*,
    No. 17mc521, 2018 U.S. Dist. LEXIS 20182 (S.D.N.Y. Jan. 29, 2018) .................................4

*Frontline Shipping Ltd. v. Emirates Trading Agency LLC*,
    No. 1:17-mc-174 (S.D.N.Y. May 26, 2017) ...........................................6

*Fujikura Ltd. v. Finisar Corp.*,
    No. 15-mc-80110-HRL (JSC), 2015 U.S. Dist. LEXIS 135871 (N.D. Cal. May
    14, 2015) .......................................................................5

*In re Guillen*,
    No. 20-MC-102 (ALC), 2020 U.S. Dist. LEXIS 114683 (S.D.N.Y. June 29,
    2020).......................................................................14

*In re Hellard*,
    No. 1:21-MC-00864 (GHW)(KHP), 2022 U.S. Dist. LEXIS 38774 (S.D.N.Y.
    Mar. 4, 2022).......................................................................13

*In re Invest Bank PSC*,
    567 F. Supp. 3d 449 (S.D.N.Y. 2021) .......................................................................3

*In re JSC BTA Bank*,
    577 F. Supp. 3d 262 (S.D.N.Y. 2021) .......................................................................3

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) .......................................................................9

*Nikon Corp. v. ASM Lithography B.V.*,
    222 F.R.D. 647 (N.D. Cal. 2004) .......................................................................5

*In re NJSC Naftogaz of Ukraine*,
    No. 3-18-MC-92-L-BK, 2019 U.S. Dist. LEXIS 243912 (N.D. Tex. Sept. 30,
    2019).......................................................................6

*In re Shagang Shipping Co.*,
    No. 14 Misc. 53-P1 (RWS), 2014 U.S. Dist. LEXIS 59313 (S.D.N.Y. Apr. 28,
    2014).......................................................................8

*In re Stati*,
    No. 15-MC-91059-LTS, 2018 U.S. Dist LEXIS 8111 (D. Mass. Jan. 18, 2018)...................6

*In re Third Eye Cap. Corp.*,
    No. 22-963 (JXN) (MAH), 2022 U.S. Dist. LEXIS 42502 (D.N.J. Mar. 10,
    2022).......................................................................6

*Union Fenosa Gas, S.A. v. Depository Tr. Co.*,
   No. 20 Misc. 188 (PAE), 2020 U.S. Dist. LEXIS 94910 (S.D.N.Y. May 29,
   2020)...................................................................................................................... 6, 11

*In re YS GM Marfin II LLC*,
   No. 20 Misc. 182 (PGG), 2022 U.S. Dist. LEXIS 38030 (S.D.N.Y. Mar. 2,
   2022)............................................................................................................................5

**Statutes**

28 U.S.C. § 1782...........................................................................................*passim*

**Other Authorities**

Dubai International Finance Centre Arbitration Law (DIFC) ................................ 7, 8, 9

Dubai International Finance Centre Arbitration Law (DIFC) Article 7(1) ...................9

Dubai International Finance Centre Arbitration Law (DIFC) Article 7(2) ...................9

Dubai International Finance Centre Arbitration Law (DIFC) Part 25, Rule 25.1 .........8

Dubai International Finance Centre Courts Enforcement Guide, Volume 4..................8

Fed. R. Civ. P. 30(b)(6)............................................................................................4

Petitioner Mammoet Salvage, B.V. ("Mammoet") respectfully submits this Reply Memorandum of Law in support of its Application for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 (the "Application"). In support of the Application, Mammoet states:

## INTRODUCTION

Notwithstanding the Opposition of Intervenor Basra Oil Company ("BOC"), the Court should grant Mammoet's Application. BOC challenges the sufficiency of only two of the three statutory factors. BOC's challenge to the "found" requirement fails because Mammoet's Application records that (1) each of the banks from which Mammoet seeks discovery maintains a branch within this judicial district from which the bank may have transacted transfers to and from the Trade Bank of Iraq, which transfers relate to the evidence Mammoet seeks to secure with this discovery; (2) all of the banks are correspondent banks of the Trade Bank of Iraq; and (3) that the Trade Bank of Iraq handles all international transfers for BOC. Likewise, post-award discovery is broadly accepted "for use" in aid of award recognition and enforcement proceedings.

BOC raises only a single challenge based on the discretionary factors, arguing Mammoet has presented no "evidence" to support the existence of responsive discovery. The Application, however, provides ample basis to support its narrowly tailored discovery requests and, as courts consistently hold, an applicant is not required to "evidence" the details of the very transactions for which it is seeking discovery.

## ARGUMENT AND AUTHORITY

### I.   Mammoet's Application satisfies the statutory requirements

Mammoet's Application satisfies the statutory requirements of 28 U.S.C. § 1782. BOC's challenge to the "found" requirement is premised solely on unduly dismissing the jurisdictional allegations contained in the Application—and is further undercut by BOC's awkward silence regarding facts in its control. BOC's challenge to the "for use" requirement misapplies the law and relies on unserious wordplay. Finally, BOC does not contest that Mammoet is an interested person.

### A.  The Correspondent Banks are "found" within the Southern District of New York

The Application's allegations are sufficient to demonstrate that the Correspondent Banks are "found" within the Southern District of New York for purposes of the Section 1782. For that matter, BOC's silence regarding its relationship with the Trade Bank of Iraq and transactions with the Correspondent Banks further supports the Court's jurisdiction here.

Mammoet seeks discovery from seven banks: Citibank NA; Commerzbank AG; JPMorgan Chase Bank National Association; MashreqBank PSC; MUFG Bank Ltd.; Standard Chartered Bank; and UniCredit Bank AG.

BOC concedes that Citibank is found within this judicial district. Mem. of Law in Resp. to Mammoet's *Ex Parte* Appl. to Take Disc. for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782, ECF No. 30 ("Opposition"), at 7, n.6. As a result, further argument is not required as to Citibank.

BOC, however, asserts that Mammoet has failed to make the jurisdictional allegations necessary about Commerzbank, JP Morgan Chase, MashreqBank, MUFG Bank, Standard Chartered, and UniCredit.[1]

Mammoet's Application records that each of these banks maintains a branch within this judicial district from which the bank may have transacted transfers to and from the Trade Bank of Iraq ("TBI"), which transfers relate to the evidence Mammoet seeks to secure with this discovery. The Application evidences that each is a correspondent bank of the Trade Bank of Iraq. Finally, the Application alleges that TBI handles all international transfers for BOC.

In its Opposition, BOC argues that Mammoet has failed to provide sufficiently specific allegations to support its Application, but "[t]he fact that Applicants cannot point to specific intermediary transactions is not cause for rejecting jurisdiction in this case; in fact, it is the very reason that Applicants are seeking to subpoena the entities." *In re Abraaj Inv. Mgmt. Ltd.*, No. 20-MC-229 (VSB), 2023 U.S. Dist. LEXIS 54296, at *11-12 (S.D.N.Y. Mar. 29, 2023). The fact that the banks are "potentially serving as intermediaries for [BOC transfers from TBI] is sufficient to show that 'discovery material sought proximately resulted from the respondents forum contacts.'" *Id.* at 11 (quoting *In re del Valle Ruiz*, 939 F.3d 520, 530 (2d Cir. 2019)); *see also, e.g.*, *In re JSC BTA Bank,* 577 F. Supp. 3d 262, 265 (S.D.N.Y. 2021) (granting discovery as to thirteen banks based on allegation that transfers "may 'have been transferred from or passed through correspondent banks'"); *In re Invest Bank PSC*, 567 F. Supp. 3d 449, 450 (S.D.N.Y. 2021) (granting discovery as to seventeen banks "to reveal the existence and nature of suspected

---

[1] Undersigned counsel advance no argument as to Standard Chartered and no longer represent Mammoet in that portion of the Application seeking discovery from Standard Chartered. Counsel from Morrison Cohen LLP have entered their appearance for that purpose. Notice of Appearance of Jeffrey D. Brooks, ECF No. 42 at 1.

transactions"). Moreover, the Court has routinely recognized that "compliance with [] subpoenas comports with fair play and substantial justice as the subpoenas are not overly burdensome and the [banks] have been subject to similar subpoenas in this District on numerous occasions." *In re Abraaj Inv. Mgmt. Ltd.*, 2023 U.S. Dist. LEXIS 54296, at *13 (collecting cases).

In its Opposition, BOC offers only three inapposite cases. In *In re Celso De Aquino Chad*, No. 19mc261, 2019 U.S. Dist. LEXIS 100483, at *8 (S.D.N.Y. June 17, 2019), the applicant made no allegation of the connection between the banks' activities in the Southern District and the discovery sought. In contrast, here, the discovery sought is a result of the banks' correspondent relationship with TBI, used by BOC for its international transactions. In *In re Fornaciari*, No. 17mc521, 2018 U.S. Dist. LEXIS 20182, at *4 (S.D.N.Y. Jan. 29, 2018), the applicant could only offer "speculation," as opposed to the relationships between the banks and TBI as well as between TBI and BOC set forth in the Application. Likewise, the Application's allegations far exceed the "conclusory allegations" and "mere speculation or hopes" of *Austl. & N.Z. Banking Grp. Ltd. v. APR Energy Holding Ltd.*, No. 17-MC-00216 (VEC), 2017 U.S. Dist. LEXIS 142404, at *16 (S.D.N.Y. Sep. 1, 2017).

In addition—and tellingly—despite filing a raft of declarations, BOC has not denied that it employs TBI for its international transactions or that it has employed the banks for transactions. The silence is awkward as this is surely knowledge within BOC's possession and would be potentially dispositive of this Application. BOC's silence is an implicit admission.

Alternatively, Mammoet requests the opportunity to take jurisdictional discovery of BOC in the form of a Fed. R. Civ. P. 30(b)(6) deposition of BOC. Having intervened, BOC has submitted to the Court's jurisdiction and is subject to discovery in furtherance of this action. *Fujikura Ltd. v. Finisar Corp.*, No. 15-mc-80110-HRL (JSC), 2015 U.S. Dist. LEXIS 135871, at

*10 (N.D. Cal. May 14, 2015) (citing *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 650 (N.D. Cal. 2004) ("Once a party has intervened, it is subject to discovery obligations under Rules 30 and 34 just like a party…."). Moreover, directing the limited jurisdictional discovery required to BOC instead of the banks is appropriate to further minimize any burden on those banks, given BOC's self-professed interest in the matter. Intervenor Basra Oil Co.'s Mem. of Law in Supp. of its Mot. for Leave to Intervene, ECF No. 29 at 7-9.

**B. The discovery sought is for use in foreign proceedings**

BOC's argument in its Opposition that the Section 1782 discovery here is not sought "for use in" qualified foreign proceedings is largely premised on a discredited interpretation of the Second Circuit's holding in *Euromepa, S.A. v. R. Esmerian, Inc.*, concerning a requirement that the foreign proceeding be "adjudicative in nature." 154 F.3d 24, 27 (2d Cir. 1998).

BOC overlooks that, since then, the Second Circuit clarified that "*Euromepa* was fundamentally a case about mootness" and that it was a "misread[ing]" to derive from it a rule "that the mere completion of an initial adjudication of a dispute categorically disqualifies a foreign proceeding under § 1782's statutory 'proceeding' requirement." *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 158 (2d Cir. 2022). Consistent with this guidance, this Court has regularly rejected the notion that proceedings for the recognition and enforcement of arbitral awards and contentious attachment proceedings were not "adjudicative in nature." *In re YS GM Marfin II LLC*, No. 20 Misc. 182 (PGG), 2022 U.S. Dist. LEXIS 38030, at *11-16 (S.D.N.Y. Mar. 2, 2022) (counting cases).

In fact, discovery on award-debtors' assets is regularly granted in aid of all stages of foreign proceedings to enforce arbitral awards, including contemplated and pending proceedings before an executable judgment is entered, as well as for contemplated and pending attachment and garnishment proceedings. (Mem. of Law in Supp. of Pet'r's *Ex Parte* Appl. for an Order to

Take Disc. for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782, ECF No. 2, ("Pet. Mem.") at 10-11.) *See also In re Doosan Heavy Indus. & Constr. Co.*, No. 19-MC-1638 (LDH), 2020 U.S. Dist. LEXIS 65593, at *1-4 (E.D.N.Y. Apr. 14, 2020) (for use in award enforcement proceedings pending in Egyptian court and contemplated in other jurisdictions[2]); *In re NJSC Naftogaz of Ukraine*, No. 3-18-MC-92-L-BK, 2019 U.S. Dist. LEXIS 243912, at *4 (N.D. Tex. Sept. 30, 2019) (for use in "possible judicial proceedings to enforce an arbitration award" in Dutch courts); *In re Third Eye Cap. Corp.*, No. 22-963 (JXN) (MAH), 2022 U.S. Dist. LEXIS 42502, at *3-10 (D.N.J. Mar. 10, 2022) (for use in award enforcement proceedings filed in Singapore High Court after Section 1782 petition); *Union Fenosa Gas, S.A. v. Depository Tr. Co.*, No. 20 Misc. 188 (PAE), 2020 U.S. Dist. LEXIS 94910, at *6-16 (S.D.N.Y. May 29, 2020) (for use in pending English court action after award was recognized by English court but before any assets were attached); *In re Stati*, No. 15-MC-91059-LTS, 2018 U.S. Dist LEXIS 8111, at *10, 17 (D. Mass. Jan. 18, 2018) (for use in contentious pre-execution award recognition and attachment proceedings in Dutch and Belgian courts[3]); *Frontline Shipping Ltd. v. Emirates Trading Agency LLC*, No. 1:17-mc-174 (S.D.N.Y. May 26, 2017) (ECF No. 5) (order granting application for discovery pursuant to Section 1782) & related application dated May 25, 2017 (ECF No. 1) (demonstrating that the court ordered discovery related to proceedings for the recognition and enforcement of an arbitration award in the United Kingdom and attachment and

---

[2] For additional factual background on the *Doosan* application, see Declaration of Joshua S. Wan (ECF No. 3 in *Doosan*), ¶¶ 2, 5-6 and Mem. of Law (ECF No. 1-2) at 1-2.
[3] Notably, the District of Massachusetts first authorized post-award asset discovery under Section 1782 in March 2015, well before the final appeal of the denial of the award-debtors' set-aside application was resolved in 2016. *See In re Stati*, 2018 U.S. Dist. LEXIS 8111, at *2; *Ascom Group S.A., Anatolie Stati, Gabriel Stati and Terra Raf Trans Traiding Ltd. v. Republic of Kazakhstan (I)*, SCC Case No. 116/2010, Decision of Amsterdam Court of Appeal, 6 November 2018.

garnishment proceedings in the United Arab Emirates and other jurisdictions where award-debtor's assets may be located).

     As set out in greater detail below, in an attempt to circumvent this body of authority, BOC relies on cases dealing with inapposite circumstances to propose novel and unprecedented exceptions to Mammoet's entitlement to such discovery here.

> **a. Section 1782 Discovery Is "for use in" in the DIFC and UAE Court Proceedings Notwithstanding BOC's Pending Appeal of its Set-Aside Application.**

     First, as regards the DIFC Court proceedings, BOC argues that Mammoet's sought discovery is not "for use in" enforcement proceedings there because BOC appealed the DIFC Court's denial of its challenge to the award, and moved to oppose Mammoet's application for enforcement of the award and no execution on the award is imminent until BOC's application has been finally disposed of. (Opp'n at 17-18.)

     BOC offers no legal authority supporting this purported basis to deny discovery.  Instead, it refers to a supposed "prohibit[ion]" on pre-judgment asset discovery based on cases *not* dealing with recognition and enforcement of foreign arbitral awards.  (Opp'n at 15, 17-18.) Specifically, the *dictum* discussion in *In re CBRE Glob. Invs. (NL) B.V.* about "plainly impermissible" "pre-judgment asset discovery" dealt with asset discovery requests in aid of a foreign litigation proceeding on the merits – *not* enforcement of a foreign judgment or award that had already disposed of the merits of the underlying dispute.  No. 20-MC-315 (VEC), 2021 U.S. Dist. LEXIS 128412, at *23 n.11 (S.D.N.Y. July 9, 2021) ("[E]ven if CBRE's request is an improper attempt to gather information relevant not to the merits but to damages . . . .").[4]  BOC

---

[4] Even there, notwithstanding its comments, the *CBRE* Court ultimately granted the requested asset discovery. *In re CBRE Glob. Invs.*, 2021 U.S. Dist. LEXIS 128412, at *23 n.11 ("[T]he Court has little issue concluding that the information sought meets the minimal threshold question of whether the information is 'for use' in the foreign litigation.").

similarly misplaces reliance on *In re Shagang Shipping Co.*, which dealt with asset discovery for use in a contract dispute before the English courts that was "still in the merits phase." No. 14 Misc. 53-P1 (RWS), 2014 U.S. Dist. LEXIS 59313, at *6 (S.D.N.Y. Apr. 28, 2014).

As Mammoet has already set out, it is well established that Section 1782 discovery of an award-debtor's assets is frequently granted before any foreign judgment is issued allowing execution on the award.  (*See* pp. 5-7 above.)

Moreover, BOC erroneously claims that because the scope of its opposition to recognition and enforcement of the award in the DIFC Court relates to grounds under DIFC Law for set-aside of an award, the discovery of BOC's assets sought here is "irrelevant" to the DIFC Court proceedings.  (Opp'n at 19-20.)

First, because BOC is contemplating seeking a worldwide freezing order in the DIFC Courts, it is factually incorrect.  Second Decl. of Daniel Morris in Supp. of Pet'r's *Ex Parte* Appl. for an Order to Take Disc. for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782, Ex. 1 (Excerpts from Part 25 of the Rules of the DIFC Courts), Rule 25.1 ("The Court may grant the following interim remedies: . . . (6) an order (referred to as a 'freezing order'): (a) restraining a party from removing from the jurisdiction assets located there; or (b) restraining a party from dealing with any assets whether located within the jurisdiction or not; . . . ."); Loftis Decl., Ex. 11 (DIFC Courts Enforcement Guide, Volume 4), at 4 n.13).

BOC's argument is also a red herring.  The discovery sought here is plainly relevant to execution of the award being enforced in DIFC Courts.  BOC's lodged appeal of the enforcement order does not change that, and for this reason U.S. courts regularly grant Section 1782 discovery in aid of pending foreign award enforcement proceedings notwithstanding pending appeals against them and/or opposition to them.  *See, e.g.*, p. 6 n.3 above; *see also Mees v. Buiter*, 793

F.3d 291, 301 (2d Cir. 2015) ("for use" requirement was satisfied when petitioner showed that the sought materials "are to be used at some stage of a foreign proceeding that was within reasonable contemplation").

Further to this point, BOC's purported distinction, relying on Article 7(1) of the DIFC Arbitration Law, of assets located in the DIFC and those elsewhere in the UAE is immaterial. (Opp'n at 20.) Under Article 7(2) of the DIFC Arbitration Law, an award enforcement judgment from the DIFC Court can be converted to one for enforcement in the Courts of Dubai (outside of the DIFC) against assets within their jurisdiction by "request[ing] an execution letter from the DIFC Courts." (Loftis Decl., Ex. 11, at 2-4; *see also* p. 12 below (noting garnishee's assignment of contract rights with BOC to a Dubai entity).)

### b. Section 1782 Discovery Is "for use in" in Pending Proceedings in the Netherlands.

BOC next argues that Section 1782 discovery is not appropriate in aid of the Dutch Court proceedings for three reasons: (i) the pre-judgment attachment proceeding there is concluded and not adjudicatory (Opp'n at 21); (ii) the sought discovery would allegedly not be relevant to recognition and enforcement of the award in the Dutch courts (*id.* at 22-23); and (iii) the sought discovery would not be relevant to any award enforcement in the Netherlands (*id.* at 23). For the reasons set out below, each argument is incorrect as a matter of law.

For its first argument, BOC asserts that the sought discovery cannot be used in the "concluded" Dutch attachment proceeding against Bashneft because Mammoet has already obtained judicial leave for conservatory attachment against Bashneft, and attachment of Bashneft assets would be done by a bailiff in a "not adjudicative" process once the award is reduced to an enforceable Dutch judgment. (Opp'n at 21; Decl. of Remme Verkerk in Resp. to Mammoet's *Ex Parte* Appl. to Take Disc. for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782, ECF

No. 33 ("Verkerk Decl."), ¶¶ 10-20.)  BOC misstates Dutch law in that it overlooks the

adjudicatory judicial scrutiny persistent in the conservatory attachment regime thereunder, as

well as its continuance into the executory attachment regime.  (*See* Decl. of Taco Wiersma

("Wiersma Decl."), ¶¶ 5-14; *see also* pp. 5-7 above & p. 11 below.)  Mammoet has clear intent to

use the information sought here to contest the declaration issued by Bashneft in response to the

conservatory attachment.  (Wiersma Decl. ¶ 15.)  Further, having shown that potentially

executable assets are located in the Netherlands (Decl. of Daniel Morris in Supp. of Mammoet's

*Ex Parte* Appl. to Take Disc. for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782, ECF

No. 3 ("Morris Decl."), ¶ 8), Mammoet has grounds to believe that the discovery sought here

would develop evidence useful for locating assets for execution as well as "for the purpose of

identifying third-party debt orders or accounts receivable," and to identify whether BOC has

employed fraudulent conveyances or related parties or trading partners to evade forthcoming

execution pursuant to the recently filed recognition and enforcement proceeding in Dutch court.

(Pet. Mem. at 5-6.)

> For its second argument, BOC submits that:

> as with the DIFC Enforcement Proceedings, any evidence on BOC's assets, trading
> partners, and the like would be irrelevant and could not be put to practical use [in
> Dutch Court enforcement proceedings]. . . . Because no Dutch Court judgment upon
> which execution can be levied has yet issued, the only use for the sought-after
> discovery would have is impermissible pre-judgment asset discovery.

(Opp'n at 22-23.)  BOC repeats the same erroneous "impermissible pre-judgment asset

discovery" theory discussed above and it fails as a matter of law for the same reasons.  Mammoet

respectfully refers the Court to its reply thereto at pages 7-8 above.

> Finally, for its third argument, BOC argues that because the Dutch proceedings could

only attach assets in or flowing through the Netherlands, the sought discovery would not be

relevant for proceedings in the Dutch courts.  (Opp'n at 23; Verkerk Decl. ¶ 34.)  BOC evidently assumes (without any support) that BOC has no assets in the Netherlands, despite the record evidence to the contrary (*e.g.*, Morris Decl. ¶ 8).  Moreover, the sole case BOC cites, *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015), is inapposite and readily distinguishable.  *Certain Funds* dealt with discovery requested by a *non-party* to the contemplated foreign proceeding that failed to "explain how they are in any position to have the [foreign] committees consider the evidence" considering they were "not in a position to direct the Delegate [party to the foreign proceeding] to consider their evidence or submit that evidence to the tribunal."  *Id.* at 121.  By contrast, BOC concedes that petitioner Mammoet *is a party* to the Dutch Court proceedings.  (Opp'n at 23.)  Moreover, the asset discovery Mammoet seeks is precisely of the type used in Dutch and other foreign proceedings for recognition and enforcement of arbitral awards.  (See pp. 5-7 above.)

### c.  Section 1782 Is "for use in" Contemplated Proceedings in Belgium.

As to Mammoet's contemplated proceedings in Belgium, BOC largely reiterates the same arguments Mammoet has already addressed above.  Each is addressed in turn below.

First, BOC erroneously suggests that the conservatory third-party attachment proceeding in Belgium is "not adjudicative" and "concluded."  (Opp'n at 24.)  As discussed at page 5 above, this Court has flatly rejected BOC's proposed categorical rule that "a conservatory garnishment [proceeding] . . . cannot qualify as an 'adjudicative' proceeding."  *See, e.g.*, *Union Fenosa*, 2020 U.S. Dist. LEXIS 94910, at *14 (post-award attachment proceeding was adjudicative because it could "involve factfinding or adjudication by the English tribunal").  Mammoet's conservatory attachment against BP Iraq N.V. ("BPI") is obtained subject to judicially scrutinized conditions. (Decl. of Alexander Hansebout ("Hansebout Decl."), ¶¶ 5-6.)  Further, BOC's own Belgian expert admits that before Mammoet can execute against the conservatory attachment obtained in

Belgium, "it would need first to seek and obtain exequatur of the Final Award" from the Belgian courts and such *exequatur* order could then be challenged "in *subsequent adversarial proceedings*." (Decl. of Dr. Roel Fransis in Resp. to Mammoet's *Ex Parte* Appl. to Take Disc. for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782, ECF No. 32 ("Fransis Decl."), ¶¶ 15, 17 (emphasis added).) Likewise, BOC's assertion that the garnishment proceeding "has concluded" by virtue of BPI's negative declaration is incorrect. (Opp'n at 24; Hansebout Decl. ¶¶ 7-9.) Mammoet fully intends to contest the negative declaration. (*Id.* at ¶¶ 10-11.)

Next, contrary to BOC's assertions (*see* Opp'n at 24-25), Mammoet's "contemplated further actions in Belgium" are neither speculative nor vague. Mammoet's Application refers to BPI's declaration in Belgium that it is party to a long-term Technical Services Contract (TSC) with BOC, that BPI had been making payments to BOC until 2021, and that in November 2021 (*i.e.* the same month that the award against BOC was issued) BPI had allegedly assigned its rights and obligations under the TSC and related agreements to a Dubai entity. (Morris Decl. ¶ 10; Fransis Decl., Ex. 3 at 3.) Mammoet's actions to date in Belgium (*id.*) reinforce that proceedings in Belgian courts are "within reasonable contemplation" and "more than just a twinkle in counsel's eye." *Certain Funds*, 798 F.3d at 124. (*See also* Hansebout Decl. ¶ 11.) Mammoet's Application also states what the contemplated further proceedings would be: a challenge to BPI's declaration (as described above), "proceedings for recognition and enforcement of the Award" (Pet. Mem. at 10), as well as potential "fraudulent conveyance," "tort, alter ego, or similar claims," to the extent "BOC may be employing . . . trading partners [like BPI] as a paying and/or payment agent to evade execution." (*Id.* at 6.)

Finally, contrary to BOC's assertion, for the reasons already stated in pages 7-8 above, Mammoet's Application does not constitute any supposedly impermissible pre-judgment asset discovery. (Opp'n at 26.)

## II.   The Court should exercise its discretion to grant the Application

BOC concedes the *Intel* discretionary factors with a sole exception, insisting that the Application is a "baseless fishing expedition" for which Mammoet has provided no "evidence." (Opp'n at 27-28.) However, even BOC's authorities do not purport to require a Section 1782 applicant to provide "evidence" that responsive discovery will be had. To the contrary, *In re Asia Mar. Pac., Ltd.*, 253 F. Supp. 3d 701, 705 (S.D.N.Y. 2015), cited by BOC, rejected subpoenas that "would direct sixteen large banks to conduct broad searches for information when the Petitioner has provided *no basis* to believe that Arma ever transacted business through any particular bank." (Emphasis added.)  As noted above, the very purpose of discovery is to develop evidence; evidence is not a prerequisite for discovery. *In re Abraaj Inv. Mgmt. Ltd.*, 2023 U.S. Dist. LEXIS 54296, at *11. The proper question, as *In re Asia Maritime Pacific* records, is whether there is a basis for the discovery sought.

As recounted above, Mammoet has demonstrated that basis, by plausibly alleging the relationship between the correspondent banks and TBI as well as the relationship between TBI and BOC.

Further, the requests are neither unduly burdensome nor overbroad. The materials sought by the subpoenas "the materials Applicants seek through the subpoenas are routinely produced by banks to satisfy discovery requests." *In re Abraaj Inv. Mgmt. Ltd.*, 2023 U.S. Dist. LEXIS 54296, at *15; *see also In re Hellard*, No. 1:21-MC-00864 (GHW)(KHP), 2022 U.S. Dist. LEXIS 38774, at *5 (S.D.N.Y. Mar. 4, 2022) ("The discovery sought is solely to identify the

13

fund flows and this information is squarely within the Banks records which are routinely sought and produced via § 1782 petitions."); *In re Guillen*, No. 20-MC-102 (ALC), 2020 U.S. Dist. LEXIS 114683, at *8 (S.D.N.Y. June 29, 2020) ("Bank of America should be able to search for and produce the records of wire transfers without significant burden."). The subpoenas are narrowly tailored to their intended purpose. *Cf. Catalyst Managerial Servs., DMCC v. Libya Africa Inv. Portfolio (In re Catalyst Managerial Servs., DMCC)*, 680 F. App'x 37, 39 (2d Cir. 2017) ("[I]t was not outside of the range of permissible decisions for the district court to conclude that documents showing the wire transfers made by and to LAP and its affiliates through U.S. banks could be used to establish the extent of CMS's lost profits following termination of the contract."). They target a specific ten-year period, relevant to the recognition and enforcement issues identified, from the contract date in the underlying dispute to present. *Cf. In re Abraaj Inv. Mgmt. Ltd.*, 2023 U.S. Dist. LEXIS 54296, at *15 (granting discovery of nine and a half year period).

## CONCLUSION

For the foregoing reasons, Mammoet respectfully requests that the Court grant its Application and authorize it to issue the proposed subpoenas.

Dated: May 25, 2023
       New York, New York

Respectfully submitted,

EVERSHEDS SUTHERLAND (US) LLP

 /s/ Levon Golendukhin

| | |
|---|---|
| William T. O'Brien (*pro hac vice*) | Ulyana Bardyn (N.Y. Bar No. 4307633) |
| John Lomas (*pro hac vice*) | Levon Golendukhin (N.Y. Bar No. 5459458) |
| Daniel Morris (*pro hac vice*) | The Grace Building, 40th Floor |
| 700 Sixth St. N.W., Ste. 700 | 1114 Avenue of the Americas |
| Washington, D.C. 20001 | New York, NY 10036 |
| Telephone:   (202) 383-0100 | Telephone: (212) 389-5000 |
| Facsimile:     (202) 637-3593 | Facsimile: (212) 389-5099 |
| williamobrien@eversheds-sutherland.com | ulyanabardyn@eversheds-sutherland.com |
| danielmorris@eversheds-sutherland.com | levongolendukhin@eversheds-sutherland.com |

*Counsel for Applicant Mammoet Salvage, B.V.*